# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| MONIQUE ATTUSO, ELI DARWIN, ZACHARY ATTUSO, MARC ATTUSO, RICKY RODRIGUEZ AND REPUBLIC FIRE & CASUALTY INSURANCE COMPANY, | : : : : : : | C.A. No.: 3:18-cv-00157-SDD-RLB |

MONIQUE ATTUSO, ELI DARWIN,
ZACHARY ATTUSO, MARC ATTUSO, RICKY
RODRIGUEZ AND
REPUBLIC FIRE & CASUALTY
INSURANCE COMPANY,

        *Plaintiff*

vs.

OMEGA FLEX, INC., & AUDUBON
PLUMBING, INC.

        *Defendants.*

C.A. No.: 3:18-cv-00157-SDD-RLB

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT OMEGA FLEX, INC.'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted on behalf of,

Dated: August 30, 2019

THE DEFENDANT
OMEGA FLEX, INC.

By: *[signature: David R. Frohn]*

DAVID R. FROHN, Bar No. 5758
MG+M Law Firm
2201 Lake Street, Suite 106
Lake Charles, LA 70601
Telephone:    (337) 419-1929
Facsimile:    (337) 564-6899
Email: dfrohn@mgmlaw.com

BY: */s/ Cullen W. Guilmartin*
Cullen W. Guilmartin (*Pro Hac Vice*)
Delaney M. Busch (*Pro Hac Vice*)
GORDON & REES LLP
95 Glastonbury Blvd., Ste. 206
Glastonbury, CT 06033
Tel: (860) 494-7513
Fax: (860) 560-0185
Email: cguilmartin@grsm.com
Email: dbusch@grsm.com

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY ......................................................2

    A. TracPipe ...................................................................................................3

    B. Plaintiff's Claim ......................................................................................5

    C. Plaintiff's Expert's Opinions Regarding Bonding and D&I Guide ........6

III. LEGAL ARGUMENT ........................................................................................111

    A. Standard for Summary Judgment ..........................................................11

    B. Republic Cannot Establish Essential Elements of its Claims ...............12

        1. Republic Cannot Establish that Its Damages Arose from a Reasonably Anticipated Use of Omega Flex's Product as it Was Improperly Installed ..................................................................12

        2. Republic Cannot Demonstrate that a Failure to Warn or Ambiguity in Instructions Proximately Caused Damages. .........................................17

        3. Republic Has No Evidence Supporting Its Breach of Warranty Claim or That An Alleged Breach of Warranty Proximately Caused Its Damages ....................................................................21

IV. CONCLUSION....................................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Auto. Ins. Co. v. Omega Flex, Inc.*
No. 4:11cv305, 2013 WL 2628658 (E.D. Mo. Jun. 11, 2013)................................. 18

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ............................................................................................ 11

*Arant v. Wal-Mart Stores, Inc., et al*
No. 13cv2209, 2015 U.S. Dist. LEXIS (W.D. La. Mar. 26, 2015) .......................... 12

*Broussard v. P&G*
517 F.3d 767 (5th Cir. 2008).................................................................. 15, 16, 17

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ............................................................................................ 11

*Kampen v. American Isuzu Motors*
157 F.3d 306 (5th Cir. 1998)............................................................................ 13, 16

*Krummel v. Bombardier Corp.*
206 F.3d 548 (5th Cir. 2000)............................................................................ 17, 18

*Little v. Liquid Air Corp.*
37 F. 3d 1069 (5th Cir. 1994) ............................................................................ 11

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*
475 U.S. 574 (1986) ............................................................................................ 11

*Matthews v. Remington Arms Co.*
641 F.3d 635 (5th Cir. 2011) ............................................................................ 13

*McFarlin v. N.H. Ins. Co.,*
2016 U.S. WL 3645200 (W.D. La. June 30, 2016)................................. 18, 20, 22

*Stahl v. Novartis Pharmaceuticals Corp.*
283 F.3d 254 (5th Cir. 2002) ............................................................................ 12

**Statutes**

La. Rev. Stat. § 9:2800.58................................................................................ 22

La. Rev. Stat. Ann. § 9:2800.51........................................................................... 5

La. Rev. Stat. Ann. § 9:2800.53........................................................................ 22

La. Rev. Stat. Ann., § 9:2800.54 ........................................................................... 12, 13, 17

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................... 10

Local Rule 56 ............................................................................................................... 2

## I.    INTRODUCTION

This is matter was initiated by Republic Fire & Casualty Ins. Co., (hereinafter "Republic") along with individual Plaintiffs, Monique Attuso (hereinafter, "Ms. Attuso"), Ricky Rodriguez (hereinafter "Mr. Rodriguez"), Eli Darwin, Zachary Attuso, and Marc Attuso (collectively "Insureds," or "Individual Plaintiffs")[1] in order to recover from losses involving a January 21, 2017, house fire at Ms. Attuso's residence located in Clinton, Louisiana.[2]  Republic alleges that Omega Flex manufactured TracPipe Corrugated Stainless Steel Tubing ("CSST" or "TracPipe") which allegedly failed as a result of a lightning strike.  Republic further alleges that this failure resulted in propane gas escaping the CSST, subsequently igniting, sustaining ignition, and causing the subject fire at Ms. Attuso's home.  Compl.  ¶¶6-8.  The Complaint contains one (1) count, sounding in negligence, failure to warn, and breach of the implied warranty of merchantability.

In support of the instant Motion for Summary Judgment, Omega Flex submits that liability cannot attach to Omega Flex for all of Plaintiff's claims as the CSST at the Attuso home was not installed in accordance with Omega Flex's instructions and warnings.  That is, the uncontroverted evidence shows that the CSST located in the Attuso home was not bonded in accordance with the product's express instructions and warnings or in accordance with local building codes.  Moreover, as detailed in Omega Flex's Motion in Limine which has been filed simultaneously herewith, Plaintiff's experts cannot reliably opine that the fire would have occurred if the CSST was bonded as required by Omega Flex's instructions.  To the contrary, the admissible evidence, which includes simulations run by Omega Flex's experts, confirm that

---

[1] The Individual Plaintiffs' claims have been resolved at this time, and therefore, this Motion will only address the claims of Republic.

[2] This matter was initially filed in the 20th Judicial District Court, Parish of East Feliciana against Omega Flex and Audubon Plumbing, and subsequently removed to this Court by Omega Flex.  Further, the claims against Audubon Plumbing were also withdrawn.

bonding of the CSST would have prevented an arcing from occurring, and therefore no hole could have been formed. Accordingly, the use of Omega Flex's CSST in this instance was not "reasonably anticipated" by Omega Flex and, as a result of the misuse of the CSST bars liability.

In addition, in regard to its fail to warn claim (contained within the sole count), Republic has not offered any expert testimony concerning the type of warning that should have been provided or how such a warning would have prevented its damages. In addition, the failure to warn claim fails as Republic Fire cannot establish that Omega Flex's failure to warn was the proximate cause of its damages, as there is no evidence that the installer was certified, nor is there any evidence that the installer ever misread (or even read) the D&I Guide.

Moreover, to the extent that the Complaint can be read as asserting an express warranty claim, Republic does not identify the "warranty" to which it is referring nor has it put forth evidence demonstrating that the CSST failed to conform to any such warranty.  Furthermore, Republic has not offered any evidence that the Attuso family, or the contractor who installed the CSST in the Attuso home, was induced to use the CSST because of any such warranty.  Finally, setting aside all of the other issues of proof on its warranty claim, Republic is unable to demonstrate that the CSST failed to perform in accordance with a warranty when it was not bonded and installed in accordance with Omega Flex's explicit instructions and warnings. For all these reasons, Omega Flex is entitled to judgment on Republic's breach of warranty claim.

Wherefore, and as demonstrated by the accompanying Local Rule 56 (a)(1) statement of undisputed facts, judgment in favor of Omega Flex should be entered.

## II.    FACTUAL AND PROCEDURAL HISTORY

This lawsuit arises from a residential fire that occurred on January 21, 2017, after lightning struck the home of Monique Attuso located at 10437 Ban St. Ext. Clinton, Louisiana

(the "Attuso Residence") (*See generally*, Plaintiff's Petition for Damages ("Pet."), at ¶¶2-3, 7. Republic contends that Omega Flex's CSST (also known as "TracPipe"), which supplied propane gas to various parts of the home, was compromised following the lightning strike when electrical energy passed or arced across the ridges of the CSST, puncturing the CSST's wall. Pet. at ¶¶ 6-7. Republic further contends that once the CSST's wall was compromised, propane gas leaked into the space between the floor and the ceiling of the Attuso Residence and was ignited "from a competent ignition source." *Id.* at ¶7. Plaintiff also contends that CSST is more susceptible to perforation from an electrical arcing event than black iron pipe resulting from a lightning strike/event. *Id*. at ¶17. Omega Flex intends to dispute each these assertions as trial; however, this Motion is primarily focused on the lack of bonding and/or improper use of the CSST.

### A.    TracPipe

TracPipe is a brand of CSST and is commonly used in residences to distribute fuel gas (either natural gas or propane) throughout the structure. CSST is often used either in conjunction with or in place of traditional black iron pipe. Black iron pipe, unlike CSST, must be installed in straight rigid lengths connected by multiple threaded fittings to change directions as the pipe is routed through walls, ceilings, and crawlspaces. Exponent Report dated June 4, 2019, **Exhibit A**, Appendix E- CSST Background at p. 1. Since CSST is flexible, its installation only requires fittings at junctions and at connections to appliances. Thus the installation of CSST requires many fewer fittings than the installation of black iron pipe for a similar household configuration. This makes a CSST system less expensive to install than a black iron pipe system, and less prone to leaks. Gas leaks can occur at a fitting due to the fitting not being properly tightened, or to the fitting loosening over time, and are a common safety hazard in homes with gas service. CSST reduces the risk of gas leaks (due to the reduced number of fittings) and thus is a safer alternative

3

than black iron pipe.  "CSST also provides additional safety over black iron pipe in resisting damage from acts of nature, such as earthquakes, tornadoes, landslides, floods and hurricanes. Any event that causes a shift in the house foundation and/or structure may cause relative movement of two ends of a gas line.  If that gas line is CSST, the inherent flexibility of CSST can accommodate."  Exhibit A, Appendix E – CSST Background at p. 2.

"CSST products, including TracPipe, are listed by Underwriters' Laboratories (UL) and have been independently tested and found to be suitable for the distribution of fuel gas within a structure in accordance with ANSI LC-1/CSA 6.26 Fuel Gas Piping Systems Using Corrugated Stainless Steel Tubing (CSST)." Exhibit A, Appendix E – CSST Background at p. 3.  The instructions which accompany Omega Flex's CSST provide that it "must only be installed by a qualified person who has been trained or otherwise qualified through the TracPipe Gas Piping Installation Program."  Exhibit A, at p. 15; Design Guide and Installation Instructions, 2005 ("D&I Guide"), relevant pages attached hereto as **Exhibit B**, p. 3.

Republic contends that CSST is more susceptible to perforation from an electrical arcing event than black iron pipe resulting from a lightning strike/event.  This is allegedly the result of its thinner walls than black iron pipe which are necessary for the product's flexibility; an attribute with many benefits as discussed above.  However, to combat the purported risk due to lightning, CSST manufacturers, including Omega Flex, require that its product be bonded to the building's grounding electrode (**which it was NOT at the Attuso home**).  Exhibit A, Appendix E at p. 9.  *See also* Kytomaa Affidavit, at ¶¶ 7-10, attached hereto as **Exhibit C** (noting bonding reduces electrical charge flowing through an arc by diverting some of the electrical charge to flow through bond wire, and bonding has been recognized as being effective in significantly

reducing the likelihood of perforation due to lightning).  Specifically, Omega Flex's D&I Guide provides the following instructions:

> **For bonding of the TracPipe® system, a bonding clamp must be attached to the brass AutoFlare® fitting adapter (adjacent to the pipe thread areas – see Figure 4-21) or to a black pipe component (pipe or fitting) located in the same electrically continuous gas piping system as the AutoFlare fitting.**  The corrugated stainless steel portion of the gas piping system SHALL NOT be used as the bonding attachment point under any circumstances.  Bonding electrode conductor sizing shall be in accordance with Article 250 of ANSI/NFPA 70.  The bonding is a requirement of the National Electrical Code.

D&I Guide, Exhibit B, at § 4.10 (emphasis added).

Moreover, the local building codes relevant to the CSST installation at the Attuso Residence likewise required that CSST be electrically and continuously bonded to the grounding electrode.  *See* Exhibit A at pp. 13-15.  *See also* Kytomaa Affidavit, Exhibit C, at 10 (noting the NFPA 54 and National Fuel Gas starting in 2009 requires direct bonding of CSST to the electrical service ground rod).  In addition, the local building code requires that CSST be bonded in accordance with manufacturer instructions.  *Id*. at xiv, and 14.  In short, the D&I Guide and the local building codes require that the subject product in this case, Omega Flex's CSST, be bonded to the home's grounding electrode, which it was not.

### B.    Plaintiff's Claim

On January 21, 2017, lightning struck the home of Monique Attuso, and the house subsequently caught fire.  *See* Pet. at ¶¶ 3,7.  Following the fire at issue, Ms. Attuso submitted a first-party insurance claim to Republic for the damages sustained to her personal and real property, as well as to recover extra living expenses she incurred while her home was being repaired.  Pet. at ¶9.  Republic fully adjusted and paid Ms. Attuso's claim.  *Id.*  Republic maintains that, pursuant to its insurance contract and as a matter of law, it is subrogated to the rights of its insured.  *Id.*

Republic (and the Individual Plaintiffs) filed suit in the 20st Judicial District Court, Parish of East Feliciana, Louisiana, under the Louisiana Products Liability Act, La. Rev. Stat. Ann. § 9:2800.51, *et seq.* (2016) (the "LPLA"), and further contending that the CSST was "unreasonably dangerous" in design, because of inadequate warnings, and because it failed to conform to an express warranty. *Id*. at ¶18. Republic also claims that, as a direct and proximate result of the defective design, inadequate and warning, and breach of warranty, it sustained economic damages for repairing the fire damaged moveable and immoveable property, and for compensating Ms. Attuso for "general and economic damages." *Id.* at ¶20. The matter was subsequently removed to federal court on or around February 16, 2018.

**C**.    **Plaintiff's Expert's Opinions Regarding Bonding and D&I Guide**

Mr. Kelly Colwell was disclosed by Republic as an expert regarding, among many other things, the effect, if any, bonding would have had on the cause of the fire, and warnings/instructions provided within Omega Flex's D&I Guide.[3] These opinions are contained within a joint report ("Integrity Report"), dated February 14, 2019 (**Exhibit D**).

1.    *Opinion Regarding the Susceptibility of Bonded CSST*

The Integrity Report provides fifteen (15) bullet points summarizing their conclusions.[4] In particular, in connection with their opinion regarding susceptibility of bonded CSST, the Integrity experts opine as follows:[5]

* * *

[8.]    The "bonding" as described in Section 4.10 of the OmegaFlex Design and
Installation Instructions was not a requirement of the 2005 National

---

[3] Mr. Kelly Colwell authored a report along with Derek Geer and Johnnie Spriuell; however, neither Mr. Geer and/or Mr. Spruiell were disclosed as experts.
[4] For the purposes of this Motion, the bullet points have been changed to numbers.
[5] With the exception of bullet points eight, nine, and fifteen, the remaining bullet points in the Integrity report are the opinions of experts (Geer and Spruiell) who were not disclosed as experts by Plaintiff.

Electrical Code, the 2006 National Fuel Gas Code, or the 2006 International Fuel Gas Code.

[9.]    In high voltage testing, we bonded CSST gas piping in the manner depicted in Section 4.10 of the OmegaFlex Design and Installation Instructions. We subjected the CSST to electrical impulse currents at voltage below that of a typical lightning strike. Our physical testing demonstrated that an arc can still occur between the CSST gas piping and another grounding conductive component. The described arc event can result in an arc hole from which the fuel gas can escape from the CSST gas piping.

[10.]    The characteristics of the arc hole observed in the … TracPipe® CSST gas piping recovered from the Attuso home are substantially similar to those created during physical testing in our high voltage laboratory.

[11.]    The fire in the Attuso home was not the result of a malfunction or failure of the electrical service, any electrical branch circuit, or any electrical appliance.

* * *

[13.]    Physical testing in our high voltage laboratory has proven that leaking fuel gas from an arc hole in CSST can, and frequently will, be ignited resulting in a sustained flame. This ignition occurs during the arc event. The arc event consists of the electrical discharge, the melted stainless steel, and the burning yellow jacket.

* * *

[15.]    Had yellow jacketed CSST gas piping not been installed in the Attuso home, this fire would not have occurred.

Integrity Report, Exhibit D, pp. 2-4. After generally summarizing their conclusions, the Integrity witnesses describe the tests or experiments performed on bonded CSST gas piping in general, as well as Omega Flex TracPipe as follows:

Multiple capacitors were charged to 17,000 volts and discharged onto the CSST gas pipe in contact with a grounded conductor, consistent with residential wiring and terminated at the same ground bus as the 'heavy gauge bonding wire.' Both the outer sheathing of the CSST and the type NM cable were pin-pricked to discharge. [They] found that … arcing occur[ed] [and] produc[ed] perforations in the gas piping … These perforations occurred at numerous distances along the length of gas piping … The characteristics of the holes created in [their] testing are consistent with the arc hole in this matter…

Integrity Report, Exhibit D, pp. 10-11.

However, there is nothing within the report to suggest that the Integrity experts attempted to apply the laboratory tests to this case and the Attuso home.  Instead, the Integrity witnesses modified the CSST by piercing (or pin-pricking) the outer sheathing of the CSST and cable, before placing branch wiring in contact with the CSST, and discharging 17,000 volts onto the CSST with a bond.  Integrity Report, Exhibit D, pp. 10-11; Colwell Dep., pp. 93-94, attached hereto as **Exhibit E** (acknowledging testing involved pinpricks; however, there was no information that the CSST at the Attuso home was pinpricked); Exponent Report, Exhibit A, p. 61; Kytomaa Affidavit, Exhibit C, at ¶¶ 11-12 (noting that the CSST had to be modified (e.g. pinpricks) in order to ensure an arcing event occurred); ¶16-18 (further explaining that the Integrity testing did not replicate the configuration of the Attuso home).  *See also* Geer Dep. at p. 49, relevant pages attached hereto as **Exhibit F** (noting "we had to prick the outer jacket because we didn't have a voltage capable of overcoming the … breakdown voltage of the [CSST's] sheath").  Of note, by pinpricking the CSST and the opposing cable, the Integrity witnesses actually created a pathway that *encouraged* an arcing event when such a condition did NOT exist at the Attuso home.  *See* Exponent Report, Exhibit A, at pp. 60-61; Kytomaa Affidavit, Exhibit C at ¶¶ 11-12.  Furthermore, since the dielectric strength of the TracPipe jacket is approximately 25,000 volts, and the equipment used by the Integrity witnesses was only capable of generating up to 17,000 volts, the Integrity witnesses would never observe an arcing event with unmodified TracPipe (e.g. similar to the CSST at issue).  Exponent Report, Exhibit A, at pp. 60-61; Kytomaa Affidavit, Exhibit C at ¶¶7 (noting a lightning strike must be sufficient to overcome the CSST jacket's dielectric strength of approximately 30KV), and 11-14 (explaining the capacitor array used by Integrity was only capable of generating voltage as high as 17 kV, and as a result had to

be pinpricked to ensure initiation of an arcing event).  *See also* Integrity Report, Exhibit D at p. 10.

Notably, there is also no evidence that the CSST within the Attuso home was in contact with an opposing electrode.  Exponent Report, Exhibit A, pp. 60-61.  In addition, the Integrity witnesses utilized a "very short" branch circuit wire to further encourage arcing, which in no way relates to the lengthy exhaust duct at the Attuso home.  *See* Colwell Dep., Exhibit E, pp. 32-34, 36-37 (acknowledging that the wires used in their testing was a "very short length… offering very low resistance).  *See also* Exponent Report, Exhibit A, at pp. 60-61; Kytomaa Affidavit, Exhibit C, at ¶ 15.

Mr. Colwell was also examined regarding the opinion relating to the susceptibility of bonded CSST; specifically, that the Attuso fire would have occurred even if the CSST was bonded.  *See* Integrity Report at p. 3 (bullet points 9 and 15); Colwell Dep. at pp. 33-35, relevant pages attached hereto as **Exhibit E**.  During his deposition, Mr. Colwell generally described the testing they performed, where the outer sheathing of the CSST and cable was pin-pricked before discharging 17,000 volts onto the CSST gas pipe with a bond; however, he acknowledged that the CSST at the Attuso home was not similarly modified (e.g. pinpricked).  *See* Integrity Report, Exhibit D, p. 9; Colwell Dep., Exhibit E, pp. 93-94 (acknowledging testing involved pinpricks; however, there was no information that the CSST at the Attuso home was pinpricked).  *See also* Kytomaa Affidavit, Exhibit C, at ¶¶ 11-14.  Furthermore, despite his opinion regarding the susceptibility of bonded CSST, Mr. Colwell acknowledged that bonding can decrease arcing events.  Specifically testifying as follows:

Q.    **Okay. Would you agree with me that bonding does decrease the probability that there will be an arcing event involving CSST?**

A.    **It's possible.**

Colwell Dep., Exhibit E, p. 35 (emphasis added). Regardless of this concession, Mr. Colwell (and the other Integrity experts) did not perform any testing specific to the Attuso home in order to verify whether bonding would have been effective in this case. *See* Exponent Report, Exhibit A, at pp. 60-61; Kytomaa Affidavit, Exhibit C at ¶¶ 7-9 (describing effectiveness of bonding), ¶¶11-12 (explaining Integrity tests did not evaluate whatsoever the mechanism by which bonding may be effective), and ¶¶12-18 (discussing that Integrity experts did not perform tests reflective of Attuso home).

### D.    Omega Flex's Rebuttal Expert Regarding Bonding

Omega Flex's experts, Harri Kytomaa and Timothy Morse, examined and evaluated the testing performed by Mr. Colwell and the other Integrity experts, and found their testing to be irrelevant as the testing actually encouraged arcing event(s) and was not representative of configuration at the Attuso home at the time of and before the subject fire. *See generally,* Exponent Report, Exhibit A. *See* Kytomaa Affidavit, Exhibit C, ¶¶ 5, 11-19. In addition, Messrs. Kytomaa and Morse performed a simulation to determine whether bonding would have been effective in preventing a hole under the same conditions as the Attuso home. *See generally,* Exponent Report, Exhibit A. *See also* Kytomaa Affidavit, Exhibit C, at ¶¶ 6, 20-21. That is, they tested whether, had the CSST been bonded in accordance with the manufacturer's instruction, this arcing event could have occurred. *See generally,* Exponent Report, Exhibit A. *See also* Kytomaa Affidavit, Exhibit C, at ¶¶6, 20-21. The simulation was run twice, once with and once without a bond wire running from the CSST to the electric panel on the north side of the residence. Exponent Report, Exhibit A, pp. 56-57. *See also* Kytomaa Affidavit, Exhibit C, at ¶¶6, 20-21. Notably, Omega Flex's experts found that the presence of a bond wire would

10

absolutely have prevented the formation of a hole.  *Id.  See also* Kytomaa Affidavit, Exhibit C, at ¶¶6, 20-21.

## III.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment

A motion for summary judgment must be granted if the pleadings, discovery materials and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  That is, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 323.

The initial burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  *Id.*  Once met, the burden then shifts to the non-moving party to demonstrate a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  *Liberty Lobby*, 477 U.S. at 249.  That is, "[t]he nonmoving party . . . cannot satisfy his summary judgment burden with . . . conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little v. Liquid Air Corp.* 37 F. 3d 1069, 1075 (5th Cir. 1994) (internal citations and quotations omitted).  "[I]n the absence of proof, [the Court does not] assume that the nonmoving party could or would prove the necessary facts."  *Id.* (citations omitted).

**B.      Republic Cannot Establish Essential Elements of its Claims**

Republic's suit against Omega Flex is based on the LPLA, which "establishes the exclusive theories of liability under Louisiana law for manufacturers for damages caused by their products." *Arant v. Wal-Mart Stores, Inc., et al,* No. 13cv2209, 2015 U.S. Dist. LEXIS, at \*5 (W.D. La. Mar. 26, 2015). To maintain a products liability action under the LPLA, a "plaintiff must establish four elements: (1) that the defendant is the manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product 'unreasonably dangerous;' and (4) ***that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.***" *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254, 261 (5th Cir. 2002) (citing La. Rev. Stat. Ann., § 9:2800.54 (A)) (emphasis added).  Omega Flex is entitled to judgment as a matter of law because Republic is unable to furnish admissible evidence that Omega Flex's product was used in a reasonably anticipate manner.  In addition, there is a complete lack of evidence supporting Plaintiff's claims sounding in failure to warn and breach of warranty.

**1.      Republic Cannot Establish that Its Damages Arose from a Reasonably Anticipated Use of Omega Flex's Product as it Was Improperly Installed**

In this instance, the misuse of Omega Flex's CSST was not "reasonably anticipated" by Omega Flex, and bars liability.  Liability cannot therefore attach to Omega Flex for Plaintiff's claims as the CSST at the Attuso home was not installed in accordance with Omega Flex's instruction and warnings.  The uncontroverted evidence shows that the CSST at the Attuso home was not bonded in accordance with the product's explicit instructions and warnings.  The bonding was required to help prevent exactly what Republic alleges in this matter; namely, that electrical arcing from lightning damaged the CSST and caused a fire.  Moreover, the evidence establishes that, had the CSST been properly installed, an arcing event would not have occurred.

To support a products liability claim under the LPLA, Republic is required to demonstrate that its damages "arose from a reasonably anticipated use of the product." La. Rev. Stat. Ann. § 9:2800.54 (A). The "reasonably anticipated use" concept is "the threshold LPLA element." *See, e.g., Matthews v. Remington Arms Co.,* 641 F.3d 635, 641 (5th Cir. 2011). If the damage did not arise from a reasonably anticipated use of the product, the court need not reach the issue of whether the product is "unreasonably dangerous." *Id.* ("The availability of an alternative design is relevant only if the user was engaged in a reasonably anticipated use of the product") (citations omitted); *Kampen v. American Isuzu Motors,* 157 F.3d 306, 309 (5th Cir. 1998). Furthermore, the concept of "reasonably anticipated use" has been defined by courts as a "liability determiner." *Kampen,* 157 F.3d at 315-16. That is, "if a plaintiff has engaged in conduct which renders his use of the product not reasonably anticipated by the manufacturer, then his recovery is not merely reduced by his percentage of fault – he cannot recover at all." *Id.*

In *Matthews*, the Fifth Circuit, interpreting the LPLA, affirmed a bench trial verdict in favor of a defendant rifle manufacturer who asserted that its product was misused, like here, by a third-party. 641 F.3d 635. In that case, the rifle's bolt-assembly pin had been removed by a non-party, but not reinstalled, which caused an uncontained explosion which injured plaintiff. *Id.* at 638. The trial court granted judgment in favor of the defendant holding that the use of the rifle without the bolt-assembly pin could not be "reasonably anticipated." *Id.* at 640. The Fifth Circuit agreed, reasoning in relevant part as follows:

> We can not say that the district court clearly erred in finding that Remington should not have reasonably anticipated (reasonably expected) the rifle to be fired after someone had removed, but failed to reinstall, the bolt-assembly pin. This is evidenced by the instructions in Remington's Model 710 owner's manual to reinstall the bolt-assembly pin when reassembling the bolt assembly. Of course, it was "reasonably foreseeable" that a user might drop the bolt-assembly pin during reassembly, as evidenced by the instruction from Remington to its assembly workers to keep a finger beneath the bolt-assembly-pin hole during the initial

assembly; however, that is not the LPLA standard. The standard is: at the time of manufacture, how did the manufacturer reasonably expect its product to be used by an ordinary person.

> **[T]he LPLA requires a link between damages and reasonably anticipated use.... [I]f damages are linked to a product misuse (i.e., one that is not reasonably anticipated), then those damages are not recoverable under the Act.** Here, the damages incurred by Matthews are directly caused by his firing the rifle after someone had removed the bolt-assembly pin and failed to reinstall it. For the reasons that follow, and in the light of the trial evidence, we can not say that the district court clearly erred in finding that such "use" was not "reasonably anticipated" by Remington.

*Id.* at p. 647 (emphasis added; internal citations and quotations omitted).

The fact that the CSST in the Attuso Home was improperly bonded is likewise a "liability determiner" in this case. The following facts are undisputed.

First, Omega Flex's D&I Guide instructed that "a bonding clamp must be attached to the brass AutoFlare® fitting adapter (adjacent to the pipe thread areas – see Figure 4-21) or to a black pipe component (pipe or fitting) located in the same electrically continuous gas piping system as the AutoFlare fitting. . . ." D&I Guide, Exhibit B, at § 4.10. *See also* Kytomaa Affidavit, Exhibit C, at ¶10 (noting code requirements relating to bonding).

Second, Omega Flex expressly warned that "[t]he installation instructions and procedures contained in this Design Guide must be strictly followed in order to provide a safe and effective fuel gas piping system or system modification" and further warned that its CSST "must only be installed by a qualified person who has been trained or otherwise qualified through the TracPipe Gas Piping Installation Program." Exponent Report, Exhibit A, at p. 15; D&I Guide, Exhibit B, at p. 3.[6]

---

[6] Moreover, the local building codes relevant to the CSST installation at the Attuso home likewise required that CSST be electrically and continuously bonded to the grounding electrode. *See* Exponent Report, Exhibit A, at p. 14. In addition, the local building code requires that CSST be bonded in accordance with the manufacturer instructions. *Id.*

Third, it is undisputed that the CSST in the Attuso Home was improperly bonded. *See* Exponent Report, Exhibit A, at pp. xiv, and 56. *See also* Kytomaa Affidavit, Exhibit C at ¶ 21.

Fourth, Republic does not have an expert who can credibly opine that, had the CSST been bonded, there still would have been a hole in the CSST.[7]  Indeed, the testing (and opinions) upon which Plaintiff relies is inadmissible and not credible, as it was not representative of the circumstances at the Attuso home prior to and at the time of the subject fire, as Plaintiff's experts were forced to modify the CSST and cable in order to reach their desired conclusion (e.g. that bonding would not prevent an arcing event). *See* Integrity Report, Exhibit D, at p. 10 (stating CSST was only charged with 17,000 volts), Colwell Dep., Exhibit E at pp. 32-37 (acknowledging that the wires used in their testing was a "very short length… offering very low resistance) and 93-94 (acknowledging testing involved pinpricks; however, there was no information that the CSST at the Attuso home was pinpricked); Geer Dep., Exhibit F at p. 49 (noting "we had to prick the outer jacket because we didn't have a voltage capable of overcoming the … breakdown voltage of the [CSST's] sheath"), Exponent Report, Exhibit A at pp. 60-61(noting Integrity testing actually encouraged arcing event). *See also* Kytomaa Affidavit, Exhibit C, at ¶¶ 11-12(describing pin pricking CSST), ¶15 (issues with use of shorter wire and encouraging arcing event), ¶16 (describing different configuration of Integrity testing from the Attuso home), and ¶17 (noting Integrity testing failed to match timescale as well).  Furthermore, even Plaintiff's own expert acknowledged that "it was possible" that bonding could decrease the potential for an arcing event.  *See* Colwell Dep., Exhibit E, at p. 35.

Fifth, Republic has not adduced any evidence demonstrating that Omega Flex knew or had reason to know that its warnings and instructions were ineffective.  *See, e.g., Broussard v. P&G,* 517 F.3d 767, 770 (5th Cir. 2008) ("[P]laintiffs who use a product in a manner that

---

[7] This is the subject of a Motion *in Limine* that was filed simultaneously with this Motion.

violates clear and express warnings can show that their use was reasonably anticipated only by presenting evidence that the manufacturer had reason to know that these warnings were ineffectual").  *See* Colwell Dep., Exhibit E, at 72-73, 84-86 (expert Colwell testified that he believed that the D&I guide should state the instructions exceed the local code; however, this was his belief, and he acknowledged that instructions can exceed code requirements). Indeed, as one court explained, "a warning against a product misuse is relevant to assessing what uses of its product a manufacturer reasonably anticipates.  When, in the face of such a warning, a plaintiff presents no evidence about whether the manufacturer should have reasonably expected users to disregard the warning, the plaintiff fails to meet the burden imposed on him by the LPLA." *Kampen,* 157 F.3d at 314 (affirming summary judgment against plaintiffs, finding use in contravention of warnings is not reasonably anticipated in the absence of proof manufacturer should have known warnings would be contravened); *Broussard,* 517 F.3d at 770 (same).

Finally, testing representative of the configuration of the Attuso home, was performed by Omega Flex's expert, which demonstrated in all cases, the installation of a bond wire in accordance with Omega Flex's instructions, would have prevented the formation of a hole. Again, Omega Flex's experts performed a simulation to determine whether bonding would have been effective in preventing a hole under the circumstances at the Attuso home.  The simulation was run twice, once with and once without a bond wire running from the CSST to the electric panel on the north side of the residence.   Exponent Report, Exhibit A, pp. 56-57.  *See* Kytomaa Affidavit, Exhibit C, at ¶¶6, 20-21. *See also* Kytomaa Affidavit, Exhibit C, at ¶¶ 11-19 (discussing Integrity testing, and how testing did not reflect configuration of Attuso home). Notably, it was found that the presence of a bond wire would have certainly prevented the formation of a hole.  Kytomaa Affidavit, Exhibit C, at ¶¶6, 20-21.

In this instance, the installer of the CSST at the Attuso home did not bond the CSST in accordance with Omega Flex's express warnings and instructions, and the testing performed in this action that represents the circumstances at the Attuso home demonstrates that *if* the CSST had been bonded the alleged arcing event *could not* have occurred, and thus, the fire would not have happened as alleged by the Plaintiff.  Furthermore, Plaintiff cannot offer any evidence that Omega Flex knew its warnings and instructions would be contravened. For this reason, summary judgment should be rendered in Omega Flex's favor on all counts of Plaintiff's Petition.

### 2. <u>Republic Cannot Demonstrate that a Failure to Warn or Ambiguity in Instructions Proximately Caused Damages.</u>

In addition to alleging that Omega Flex's CSST was "unreasonably dangerous" due to a design defect, Republic also contends that inadequate warnings rendered it so.  Pet. at ¶¶ 14-15, 18.  However, Plaintiff cannot establish that the allegedly defective warning caused the damage to improperly bonded CSST system that was allegedly damaged by lightning because there is no evidence or information that the installer misread (or even read) the instructions.  Instead, it is evident that installer did not follow Omega Flex's explicit warnings and instructions, as the CSST was not bonded in accordance with the D&I guide, and therefore, Omega Flex is entitled to judgment as a matter of law on Republic's failure to warn claim for this reason as well.

Under the LPLA, a product may be "unreasonably dangerous" because of a failure to warn.  La. Rev. Stat. § 9:2800.54 (A).  "To recover under the theory of failure to warn, the plaintiffs bear the burden of establishing: (1) that the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product; and (2) that the failure to do so proximately caused the claimant's injuries."  *Broussard,* 463 F.Supp.2d at 609 (citing La. Rev. Stat. §§ 9:2800.54) and 9:2800.57); *Krummel v. Bombardier Corp.,* 206 F.3d 548, 557

(5th Cir. 2000).  In assessing whether there has been a failure to warn, Louisiana courts apply a

similar risk-utility analysis to that used in assessing whether a product is defective in design.

*McFarlin*, 2016 WL 3645200, at *6.

> In both design defect and failure to warn cases courts have applied a risk-utility
> analysis to determine liability.  A court must first determine what risk, if any, the
> product created.  A court must then determine whether a reasonable person would
> conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility
> of the product.  In applying the risk-utility analysis, we have said that *a plaintiff
> must show evidence concerning the frequency of accidents like his own, the
> economic costs entailed by those accidents, or the extent of the reduction in
> frequency of those accidents that would have followed on the use of his
> proposed alternative design.*

*Id.* (citing *Krummel*, 206 F.3d at 551 (failure to warn claim failed where plaintiff did not

introduce evidence as to the frequency of accidents caused by the supposedly dangerous

quality)).  Furthermore, when "assessing whether the failure to warn proximately caused the

plaintiff's injury, a mere allegation of inadequacy is insufficient for a plaintiff to survive

summary judgment.  A plaintiff must offer some evidence of the warning that should have been

given and how such a warning would have prevented the injury."  *McFarlin,* 2016 WL 3645200,

at *7 (citing *Broussard,* 463 F.Supp.2d at 609-10).

As indicated above, Republic has not offered any evidence concerning the "warning" it

contends should have been given.  Neither has Republic offered any evidence concerning the

"frequency of accidents" which have allegedly occurred due to the use of CSST or inadequate

warnings about the dangers of CSST.  Likewise, Republic has not offered any evidence

concerning the potential economic repercussions a supposedly proper warning would have

avoided.  In *McFarlin*, *supra,* a case decided by the United States District Court for the Western

District of Louisiana, the plaintiff similarly offered no evidence on the frequency of accidents

which occur because of the products alleged defect nor on the economic repercussions of a

18

desired warning, which the court found "problematic." 2016 WL 3645200, at *7. In granting summary judgment in favor of the manufacture on plaintiff's failure to warn theory, the District Court noted: "whether a product has a dangerous characteristic in this context depends, in part, on a risk-utility assessment which [Plaintiff] fails to conduct." *Id.* Since the plaintiff in that case failed to conduct a risk-utility analysis, the court determined the plaintiff's failure to warn claim could not survive summary judgment. *Id.* Here too, Republic has not offered any evidence to support a risk-utility analysis in conjunction with its failure to warn theory and, for this reason summary judgment is proper with respect to the failure to warn claim.

Republic's failure to warn claim, however, fails for additional and independent reasons. First, although Republic has identified the contractor responsible for installing the CSST in the Attuso Residence, it has failed to provide any evidence concerning the state of mind of the contractor: that is, whether the contractor was aware of the alleged risks associated with CSST or whether Omega Flex's use of the desired warning (assuming Republic could articulate what that is) would have caused the contractor to act differently (i.e. by bonding the CSST or foregoing its use altogether) and, therefore, prevented Republic's damages. In *American Auto. Ins. Co. v. Omega Flex, Inc.*, No. 4:11cv305, 2013 WL 2628658 at * p. 28 (E.D. Mo. Jun. 11, 2013), the United States District Court for the Eastern District of Missouri granted summary judgment in favor of Omega Flex with respect to the plaintiff's failure to warn theory for this very reason. There, the court found:

> Because the installing contractor has not been identified, there is no evidence on the record from which a jury could conclude that the installer did not already know of the danger associated with TracPipe or that a warning different than that included in the 2001 D&I Guide would have altered the installers actions. . . Plaintiff has offered no evidence with respect to this required element of its claim . . . Without this critical, threshold information, Plaintiff's failure to warn claim fails as a matter of law.

19

*Id.* at p. 28 (citations omitted).

Finally, Republic also cannot establish that Omega Flex's alleged failure to warn of any "risks" associated with CSST or that ambiguity in the instructions given proximately caused Republic's damages because Omega Flex's express warnings and instructions were not followed. "Courts have found that a plaintiff's failure to heed already-present instructions or warnings on a product can stymie the causal connection between the alleged failure to warn and the injury." *McFarlin,* 2016 WL 3645200, at *7 (citation omitted). Where an installer/user does not read the instructions and warnings, it is axiomatic that there cannot be a causal connection between the allegedly ambiguous instruction and the Plaintiff's claimed damage.

Here, Omega Flex's instructions explicitly state that bonding was required. D&I Guide, Exhibit B, at § 4.10. Moreover, Omega Flex expressly warned that "[t]he installation instructions and procedures contained in this Design Guide must be strictly followed in order to provide a safe and effective fuel gas piping system or system modification" and further warned that its CSST "must only be installed by a qualified person who has been trained or otherwise qualified through the TracPipe Gas Piping Installation Program." Exhibit A, at p. 15; D&I Guide, Exhibit B, at p. 3.[8] It is undisputed that the CSST in the Attuso Home was improperly bonded. *See* Exhibit A at pp. xiv and 56 ("The Attuso residence TracPipe system was not directly bonded to the home grounding electrode. Therefore, it was not installed in accordance with the D&I Guide."). Plaintiff cannot prove that the warning was defective because it is equally plausible that the installer either did not read the warning, or read the warning and disregarded it. Plaintiff's warning "expert" admitted as much in his deposition testimony.

---

[8] As explained by Dr. Morse, "bonding of TracPipe, as prescribed by the Omega Flex D&I Guide, is necessary to significantly reduce the likelihood of arcing between TracPipe and another conductor such as a metal duct, water pipe, or branch circuit wiring in the event of lightning." Exhibit A, at pp. xiv and E.9. *See also* Kytomaa Affidavit, Exhibit C, at ¶¶ 7-10 (discussing purpose and effectiveness of bonding).

Q.    And so we have no information that the installer here read the instructions; is that correct?

A.    I have not spoken to the installer in this case.  I don't know what he has read and what he hasn't . . .

Exhibit E at p. 72.  In addition, Mr. Colwell testified:

Q.    But in any event, here the installer didn't read - - or we have no information that [the installer] read the D&I guide.  *So we can't say that he read the D[&]I guide the way that you read it?*

A.    *I don't know what the installer did.*

Exhibit E at p. 86 (emphasis added).  Without eliminating those possibilities, Plaintiff cannot show that the allegedly ambiguous and confusing warning was defective.  Therefore, Plaintiff cannot establish that the allegedly defective warning caused the damage of an improperly bonded CSST system that was allegedly damaged by lightning.  Because the installer did not follow Omega Flex's explicit warnings and instructions, Omega Flex is entitled to judgment as a matter of law on Republic's failure to warn claim for this reason as well.

**3.    Republic Has No Evidence Supporting Its Breach of Warranty Claim or That An Alleged Breach of Warranty Proximately Caused Its Damages**

Republic also maintains that Omega Flex's CSST was "unreasonably dangerous" because it did not conform to a warranty. Pet., at ¶18.  Notably, Republic does not identify the "warranty" to which it is referring nor has it put forth evidence demonstrating that the CSST failed to conform to any such warranty.  In addition, there is no evidence that the homeowner or the installer of the CSST was induced to use the CSST as a result of any such warranty.  Furthermore, the CSST at issue was not bonded and installed in accordance with explicit instructions and warnings contained within the D&I Guide, and therefore, Republic is unable to demonstrate that the CSST failed to perform in accordance with such a warranty.

21

Under the LPLA, a product can be unreasonably dangerous if it does not conform to an "express warranty"[9] made by the manufacturer about the product *if* the express warranty has induced the claimant or another person or entity to use the product *and* the claimant's damage was proximately caused because the express warranty was untrue. *McFarlin,* p.*8 (citing La. Rev. Stat. § 9:2800.58) (emphasis added). "To survive summary judgment on this claim, a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the produce because of that warranty, (3) the product failed to conform to that express warranty and (4) the plaintiff's damage was proximately caused because the express warranty was untrue." *Id.* (citation omitted).

In *McFarlin, supra,* the District Court declined to enter summary judgment on the plaintiff's express warranty claim where the plaintiff presented evidence of defendant's express warranty, offered witness testimony that the warranty induced the purchase of product *and* that the manufacturer's instructions for installation and use were followed, and there was a genuine issue as to whether the product failed to live up to said warranty.  2016 WL 3645200, at * 8.

By contrast, here, Republic does not identify the "warranty" to which it is referring nor has it put forth evidence demonstrating that the CSST failed to conform to any such warranty. Furthermore, Republic has not offered any evidence that the Attusos, or the contractor who installed the CSST in the Attuso Home, was induced to use the CSST because of any such warranty.  Finally, setting aside all of the other issues of proof on its warranty claim, Republic is unable to demonstrate that the CSST failed to perform in accordance with a warranty when it

---

[9] The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise abut a product or its nature, material, or workmanship that represents, affirms, or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance.  Express warranty does not mean a general opinion about or a general praise of a product.  A sample or model of a product is an express warranty."  La. Rev. Stat. Ann. § 9:2800.53 (6).

was not bonded and installed in accordance with Omega Flex's explicit instructions and warnings. *See, supra,* Section B.1 (discussing reasonably anticipated use of the product). For all these reasons, Omega Flex is entitled to judgment on Republic's breach of warranty claim.

## IV.    CONCLUSION

Republic cannot establish that the misuse of Omega Flex's CSST was reasonably foreseeable, nor has Republic offered any evidence in support of its breach of warranty and failure to warn claims. For all these reasons, Omega Flex is entitled to judgment as a matter of law on Plaintiff's Petition.

Dated: August 30, 2019

Respectfully submitted,
THE DEFENDANT
OMEGA FLEX, INC.

By: _David R. Frohn_

DAVID R. FROHN, Bar No. 5758
P. O. Box 2090
One Lakeshore Drive, Suite 1220
Lake Charles, LA  70602-2090
Telephone:    (337) 433-5523
Facsimile:    (337) 433-9925

BY:    _/s/ Cullen W. Guilmartin_
Cullen W. Guilmartin (*Pro Hac Vice*)
Delaney M. Busch (*Pro Hac Vice*)
GORDON & REES LLP
95 Glastonbury Blvd., Ste. 206
Glastonbury, CT 06033
Tel: (860) 494-7513
Fax: (860) 560-0185
Email: cguilmartin@grsm.com
Email: dbusch@grsm.com

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that, on this 30th day of August, 2019, the foregoing Memorandum was electronically filed with the Clerk of the Court using the *CM/ECF* system. Notice of this filing will be sent to:

> Hannah, Colvin & Pipes, LLP
> 10626 Timberlake Drive
> Baton Rouge, LA 70810
> Telephone (225) 766-8240
> Facsimile (225) 766-5546
> wrpipes@hcpllp.com
>
> *Counsel for plaintiffs*

by operation of the Court's electronic filing system.

_____

**DAVID R. FROHN**