# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MONIQUE ATTUSO, et al., | : |
| *Plaintiff* | : |
| vs. | : C.A. No.: 3:18-cv-00157-SDD- |
| OMEGA FLEX, INC., & AUDUBON | : RLB |
| PLUMBING, INC. | : |
| *Defendants.* | : |
| | : |

## Plaintiff Republic Fire and Casualty Company's Opposition
## to the Motion for Summary Judgment submitted by Defendant Omega Flex

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.      STATEMENT OF FACTS............................................................................1

II.     LEGAL STANDARD FOR SUMMARY JUDGMENT...................................7

III.    THERE IS A DISPUTED QUESTION OF FACT AS TO WHETHER THE
        OMEGAFLEX CSST WAS THE CAUSE OF THE FIRE………………………... 9

IV.     OMEGA FLEX DID NOT HAVE IN PLACE AN EFFECTIVE MEANS OF
        DISSEMINATING WARNINGS TO CONSUMERS....................................10

V.      THERE IS A QUESTION OF FACT REGARDING THE CLARITY AND
        EFFECTIVENESS OF OMEGA FLEX'S INSTRUCTIONS REGARDING
        BONDING AND GROUNDING OF ITS TRACPIPE CSST
        PRODUCT........................................................................................11

VI.     THERE IS A QUESTION OF FACT REGARDING WHETHER
        BONDING OF TRACPIPE CSST PURSUANT TO THE D&I GUIDE
        WOULD HAVE PREVENTED THE FIRE AT THE ATTUSO
        RESIDENCE. ...................................................................................13

VII.    OMEGA FLEX HAD A STATUTORY DUTY TO WARN CONSUMERS OF
        DANGERS AFTER THE SALE OF ITS PRODUCT ………………………….. 15

CONCLUSION AND PRAYER .............................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Cent. Ins. Co. v. Terex Crane*, La. App. 2003-0279, 861 So. 2d 228 (La.App. 1 Cir. 2003) 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .................................................................................................................................................. 7

*Andries v. General Motors*, 444 So.2d 1180, 1183 (La. 1983).................................................... 17

*Bache v. American Tel. & Tel. Co.,* 840 F.2d 283, 287 (5th Cir. 1988) ........................................ 7

*Bell v. Jet Wheel Blast,* 462 So. 2d 166 (La. 1985) ..................................................................... 18

*Bloxum v. Bloxum*, 512 So. 2d 839, 843 (La. 1987) .................................................................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)................ 7

*Conder v. Hull Lift Truck, Inc.*, 405 N.E.2d 538, 546 (Ind.Ct.App. 1980)................................... 17

*Daigle  v. Audi*, 598 So. 2d 1304, 1307 (La. App. 1992) ............................................................ 16

*Delphen v. Depart. of Transp. & Dev.*, 657 So. 2d 328, 333 (La. App. 1995)............................ 16

*Dunne v. Wal-Mart Stores, Inc.*, 679 So. 2d 1034, 1037 (La. App. 1996) .................................. 16

*E.E.O.C. v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1179-80 (5th Cir. 1996) ................................ 7

*Fields v. City of South Houston, Texas,* 922 F.2d 1183, 1187 (5th Cir. 1991)............................... 7

*Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1079 (5th Cir. 1995) ................................... 8

*Hebert v. Brazzel*, 403 So.2d 1242, 1244 (La. 1981).................................................................... 17

*Jack v. Alberto-Culver USA, Inc*., 949 So.2d 1256, 1259 (La. 2007)........................................... 17

*Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 523 (5th Cir. 1984) ............................... 17

*Jaeger v. Auto. Cas. Ins. Co.*, La. App. 95-2448, 682 So. 2d 292, 297 (La. App. 4 Cir. 1996) ... 16

*Kampen v. American Isuzu Motors*, 119 F.3d 1193, 1197 (5th Cir. 1997).................................... 16

*Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990)................... 7

*Levi v. Southwest La. Elec. Membership Co-op.*, 542 So. 2d 1081, 1086 (La. 1989) ................. 18

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir. 1987) ............... 7

*Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 834 (Tex. 1986) ............................................. 18

*Marshall v. Beno Truck Equip., Inc.*, 481 So.2d 1022, 1032 (La. App. 1st Cir. 1985) ............... 17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)........................................................................................................... 7

*Murphy v. Great Northern Ry. Co.*, 2 Ir. Rep. 301 (1897) ......................................................... 19

*Murray v. Ramada Inn, Inc.*, 821 F.2d 272 (5th Cir. 1987)......................................................... 18

*Murray v. Ramada Inns, Inc.*, 521 So. 2d 1123, 1136 (La. 1988) ............................................... 18

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).........................................7

*Reyes v. Wyeth Lab.*, 498 F.2d 1264, 1281-82 (5th Cir. 1974)...................................................17

*Safeco Ins. Co. v. Baker*, 515 So. 2d 655 (La. App. 1987)........................................................11

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 265(5th Cir. 2002)....................................13, 15

*Terrebonne v. Goodman Mfg. Corp.*, 687 So. 2d 124 (La. App. 1996).......................................18

*Walker v. Babcock Indus., Inc.*, 582 So. 2d 258, 259 (La. App. 1991) ......................................16

*Williams v. Adams,* 836 F.2d 958, 961 (5th Cir. 1988)................................................................7

## Statutes

La. R.S. § 9:2800.57(A)...............................................................................................................15

La. R.S. § 9:2800.57(C)..........................................................................................................8, 15

La. R.S.. § 9:2800.53(7)...............................................................................................................17

## Other Authorities

John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 586 (1989)...........................................................................................................................................16

Plaintiff, Republic Fire and Casualty ("Republic") as Subrogee of Monique Attuso, submits the following opposition to Defendant's Motion for Summary Judgment [Doc. 57], and submits the following Memorandum of Law:

## I.     STATEMENT OF FACTS

This action arises out of a fire which occurred at the residence owned by Monique Attuso, located at 10437 Bank Street Extension, Clinton, Louisiana. On January 21, 2017, a fire occurred destroying the residence and its contents. The fire was caused by a defective flexible gas piping system installed at the home. The (flexible) corrugated stainless steel tubing ("CSST") was manufactured by Defendant Omega Flex.



During a storm, in the early morning hours of January 21, 2017, the Attuso family heard a "huge" lightning strike. They lost electrical power and saw sparks appear to fall from the roof as they looked through the kitchen window. **Exhibit 1 -** Rodriguez deposition, pp. 20:12-24, 17:18-18:15 and 19:19-23. They found a small fire underneath the kitchen sink that was easily extinguished with water. *Id.,* pp. 22:11-23:13. Mr. Rodriguez, a resident of the Attuso home searched the rest of the house, including closets and attic areas, and found no other evidence of fire. *Id.,* pp. 23:16- 24:17.  Later, smoke was seen, and the house was on fire. *Id.,* pp. 25:4-20.

Christian Mulkey, fire investigator with M.A. Stringer and Associates, investigated the fire loss that occurred on January 21, 2017. Mulkey determined that the fire originated in the

interstitial space in the area over the kitchen range, which is the void space between the ceiling of the kitchen and the floor of the upstairs bonus room and bedroom. See, **Exhibit 2** – Mulkey Report; **Exhibit 3 -** Mulkey Deposition, pp. 61:23-62:9; 72:2-15 and 146:2-147:13.

Charles Keller Colwell with Integrity Forensics and Engineering, LLC ("Integrity") investigated this fire. His affidavit and the Integrity Report are attached as **Exhibit 4**. As stated in the Affidavit, Integrity's investigation supported the following conclusions:

- At approximately 2:57 a.m. on January 21, 2017, lightning struck the Attuso home generating one arc hole in a section of 3/4" OmegaFlex TracPipe® corrugated stainless steel tubing (CSST). This section was routed within the interstitial space between the ceiling of the kitchen and the floor of an upstairs bonus room. This arc hole was located within the area where witnesses first noticed the fire. It is also within the area of origin as identified by Mr. Mulkey.  **Exhibit 5 -** Colwell Deposition, pp. 25:10-26:18.



- The fire in the Attuso home occurred when a lightning-induced arc hole was created in the CSST gas piping system. The propane fuel gas within the OmegaFlex TracPipe® CSST piping escaped and was ignited during the arc event. This resulted in a fuel-gas-fed fire.  **Ex. 4,** ¶ 12; **Ex. 5**, pp. 124:22-125:20.

2

- The arc event causing the hole occurred between the TracPipe® CSST and a nearby metallic vent duct for the kitchen range's venthood system. This venthood unit was grounded via its electrical branch circuit.  **Ex. 4,** ¶ 13**; Ex. 5***, pp. 27:6-9.

- The identified arc hole is roughly elliptical in shape, about 1.10 by 1.95 mm in overall extent. The area of the hole is approximately 1.52 square millimeters. Our estimate of charge transfer, based on the Hagenguth equation and assuming the measured 0.012 inches CSST wall thickness, is approximately 0.60 coulombs (a measure of electrical charge transfer). **Ex. 4,** ¶ 14.

- The calculated 0.60 coulombs (**Ex. 4,** ¶ 14; **Ex. 5***, pp. 33:17-21) responsible for causing the hole in the yellow jacketed OmegaFlex TracPipe® installed in the Attuso home would not have caused a hole in OmegaFlex's TracPipe® CounterStrike® product. Nor would 0.60 coulombs have been capable of perforating rigid black-iron pipe.  **Ex. 4,** ¶ 14; **Ex. 5***, pp. 102:25-103:4.

- Because of the arc hole, the OmegaFlex TracPipe® CSST used to distribute propane gas throughout the Attuso home failed to contain the fuel gas. **Ex. 4,** ¶ 15**.

- The gas piping system in the Attuso home was bonded to the electrical ground in accordance with the 2005 National Electrical Code via the equipment bonding connections at the gas-fired, tankless water heaters. This also meets the bonding requirement for gas piping as stated in the 2006 National Fuel Gas Code, and 2006 International Fuel Gas Code. At the time this home was constructed, these were published and recognized industry standards, though not formally adopted in East Feliciana Parish.  **Ex. 4,** ¶ 22.

- The "bonding" as described in Section 4.10 of the OmegaFlex Design and Installation Instructions was not a requirement of the 2005 National Electrical Code, the 2006 National Fuel Gas Code, or the 2006 International Fuel Gas Code.  **Ex. 4,** ¶ 23.

- In high voltage testing, Integrity bonded CSST gas piping in the manner depicted and described in Section 4.10 of the OmegaFlex Design and Installation Instructions. We subjected this CSST to electrical impulse currents at voltages below that of a typical lightning strike.  **Ex. 5**., pp. 94:11-23.  Our physical testing demonstrated that an arc can still occur between the CSST gas piping and another grounded conductive component. The described arc event can result in an arc hole from which the fuel gas can escape from the CSST gas piping. **Ex. 4,** ¶ 28.

- The characteristics of the arc hole observed in the OmegaFlex TracPipe® CSST gas piping recovered from the Attuso home are substantially similar to those created during physical testing in our high-voltage laboratory. **Ex. 4,** ¶ 30.

- The fire in the Attuso home was not the result of a malfunction or failure of the electrical service, any electrical branch circuit, or any electrical appliance.  **Ex. 4,** ¶¶ 18, 19.

- Other potential electrical ignition sources within the area of origin as identified by Mr. Mulkey were considered. All other potential electrical ignition sources, except the lightning-induced arc hole in the OmegaFlex TracPipe® CSST gas piping, can be eliminated as a probable electrical cause of this fire.  **Ex. 4,** ¶ 18.

- Physical testing in Integrity's high voltage laboratory has proven that leaking fuel gas from an arc hole in CSST can, and frequently will, be ignited resulting in a sustained flame. This ignition occurs during the arc event. The arc event consists of the electrical discharge, the melted stainless steel, and the burning yellow jacket.  **Ex. 4,** ¶ 21.

Elizabeth C. Buc, PhD, PE, Materials Engineer, investigated this fire. Her report is attached as **Exhibit 6,** and Dr. Buc's Deposition is attached as **Exhibit 7.** She concluded as follows:

1)    The cause and the likely ignition source of the Attuso fire was the lightning induced penetration and melting of the thin wall corrugated stainless steel tubing above the kitchen ceiling. The Tracpipe CSST arced to the nearby sheet steel vent. The temperature of the molten stainless steel is sufficient to ignite the escaping gas. **Ex. 7,** p.9:9-14**.**

2)    Black pipe would not have failed in the same way as the CSST. The Attuso fire would most likely not have occurred if the gas piping were black pipe. Black pipe is cost effective in that a lightning protection system is not required. TracPipe is marketed by Omega Flex as a replacement for thicker, more robust black iron pipe as a means of delivering natural gas throughout a home. The CSST product is very thin – as thin as four sheets of paper. **Ex. 7,** p.46:17-20.

3)    Omega Flex Tracpipe CSST is unreasonably dangerous and defective as designed due to the thin wall construction making it more susceptible to catastrophic damage from direct and indirect lightning strike releasing gas into structures increasing the risk of fire. **Ex. 6**.

The Attuso's home was completed in 2008. Prior to the fire that occurred on January 21, 2017, she had never heard of corrugated stainless-steel tubing or CSST and was not aware CSST was installed in her home. Neither prior to nor after the fire, did she ever receive any warnings or communications, written or otherwise, from Omega Flex, Inc. or anyone else regarding the installation of CSST in her home or the risks associated with its use. She would not have installed CSST TracPipe if she would have known or been advised or warned by Omega Flex or anyone of the dangers associated with its use regarding direct or indirect lightning strikes.

**Exhibit 8** – Attuso Affidavit.

Based upon numerous investigations, lawsuits and admissions by Omega Flex, CSST will fail catastrophically from the high voltage discharge of electricity produced by a direct or nearby lightning strike to a home due to its thin-walled construction and dielectric outer jacket. Omega Flex moves for summary judgment as to Plaintiff's claims regarding its defective CSST product, asserting that the product liability claim is barred because the CSST was not properly bonded, and as to Plaintiff's failure to warn claims, arguing that the warnings contained in its December 2005 TracPipe Flexible Gas Piping Design Guide & Installation Instructions ("D&I Guide") are adequate, and asserts that because Republic cannot demonstrate that the lack of adequate warnings proximately caused its damages. Omega Flex's Motion should be denied because the CSST can and does fail even when properly bonded, and it is undisputed that Attuso never received any warnings from Omega Flex, even though Omega Flex had knowledge of the propensity for its TracPipe CSST to be damaged by lightning. Moreover, Omega Flex has not satisfactorily demonstrated that bonding and grounding of its TracPipe CSST product in compliance with its D&I Guide is an effective means of protecting CSST from damage due to lightning. Finally, Louisiana recognizes a post-sale duty to warn, and Omega Flex failed to effectively warn consumers in Louisiana, like Attuso, of the dangers associated with its TracPipe CSST product. Through its participation, sponsorship and active engagement in a National Yellow CSST Safety Campaign, Omega Flex failed to take reasonable and careful actions, and through any other communications with consumers, to disseminate vital warnings regarding the propensity for TracPipe CSST to be damaged by lightning to consumers in Louisiana, specifically Attuso. In light of the above, Omega Flex's Motion for Summary Judgment is not well founded and must be denied.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment proponents must present evidence—not merely conclusory statements—that there are no material issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). The ultimate inquiry is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevails as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986);. A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. These motions permit the Court to resolve lawsuits without the necessity of trials if there is no *genuine* dispute as to any facts which are material and the moving party is entitled to judgment as a matter of law. *E.E.O.C. v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1179-80 (5th Cir. 1996); *Fields v. City of South Houston, Texas,* 922 F.2d 1183, 1187 (5th Cir. 1991); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir. 1987). In order for the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990); *Bache v. American Tel. & Tel. Co.,* 840 F.2d 283, 287 (5th Cir. 1988), *cert. denied,* 488 U.S. 888 (1988); *Williams v. Adams,* 836 F.2d 958, 961 (5th Cir. 1988). All of the evidence and inferences

drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1079 (5th Cir. 1995), *cert. denied,* 516 U.S. 995, 116 S. Ct. 532, 133 L. Ed. 2d 438 (1995).

In this case, Defendant's motion for summary judgment must be denied because there are significant and genuine factual disputes, including:  1) whether the CSST is defective; 2) whether despite bonding, the CSST can fail with a lightning strike. It is undisputed that there are no warnings on the product itself, there is no evidence that the bonding requirements were communicated to the installer, and if they were, the language in the D&I Guide is so ambiguous or confusing such that a reasonably prudent installer would not know the specific type of bonding requirements for the TracPipe CSST product; 3)  whether Omega Flex failed to properly communicate to its consumers, including Attuso, in accordance with La. R.S. 9:2800.57(C). which provides: "A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who ………is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning…. Defendant took on or assumed the duty to disseminate warnings to consumers in Louisiana, like Attuso, of the propensity for its yellow-jacketed CSST product to be damaged by lightning. Yet; there was no meaningful or reasonable effort conducted to reach homeowner's like Attuso, who never received a warning about the Defendant's dangerous CSST product lurking in her home.

### III.    THERE IS A DISPUTED QUESTION OF FACT AS TO WHETHER THE OMEGA FLEX CSST WAS THE CAUSE OF THE FIRE.

Republic has disclosed and presented for deposition five experts in this matter to opine as to the area of origin and cause of the fire at the Attuso residence. Through their investigation, Plaintiff's experts determined that the cause and the likely ignition source of the Attuso fire was

the lightning induced penetration and melting of the thin wall corrugated stainless steel tubing above the kitchen ceiling. **Exhibit 3 -** Mulkey Deposition, pp. 150:10-151:14. The Tracpipe CSST arced to the nearby HVAC vent. The temperature of the molten stainless steel was sufficient to ignite the escaping gas. *Id.,* pp. 145:25-146:21. Through their fire scene investigation, Plaintiff's experts determined that the proximate cause of the Attuso fire is consistent with a direct lightning strike which caused a breach in the incoming CSST supply line in the space between the first and second floors. *Id.,* pp. 134:8-10 and 116:8-23. The ignition source for this fire is electrical arcing/heat energy in between the CSST supply line and metal duct work, which was caused by a direct lighting strike which attached to the residence. **Exhibit 2 -** Mulkey Report**, Exhibit 3 -** Mulkey Deposition, pp. 65:7-19; 120:4-124:8, 131:8-133:4; 147:9-13; 148:11-151:14; 153:25-154:15; 156:4-13 and 156:5-12. There were no electrical or other type of potential ignition source found within the identified area of fire origin during the removal of the debris and processing of the fire scene. **Exhibit 2 -** Mulkey Report; **Exhibit 3 -** Mulkey Deposition**,** pp. 62:14-63:9; 154:11-15 and 158:7-23.

The parties agree that an electrical arcing event formed the melting hole found post-fire in the TracPipe CSST supply line at the Attuso residence. According to Defendant's expert, Harri Kytomaa, "[o]ne hole was found in the TracPipe CSST supply line near the branch to the kitchen stovetop. The hole was formed from electrical arcing between the CSST and the metal vent pip for the stovetop exhaust hood. The source of the electrical energy was lightning." **Exhibit 9 -** Exponent Kytomaa Report, at ¶6. Through testing conducted by both Dr. Buc and Integrity Forensics & Engineering, Plaintiff's experts have concluded that, with regard to the gas escaping from the hole in the Attuso line, the lightning-induced arcing event served as competent ignition sources for the escaping gas. The parties disagree as to whether the hold in the CSST caused the

fire. **Exhibit 2** – Mulkey Report.

## IV.    OMEGA FLEX DID NOT HAVE IN PLACE AN EFFECTIVE MEANS OF DISSEMINATING WARNINGS TO CONSUMERS

Republic can present evidence sufficient to demonstrate that a warning related to yellow jacketed TracPipe CSST, and its propensity to become damaged by the electrical current from a lightning strike was necessary. Specifically, Mark F. Albino, Executive Vice President and Chief Operating Officer for Omega Flex, Inc., testified that as of November 27, 2000, Omega Flex had confirmed that TracPipe CSST was capable of being punctured by lightning, yet they continued to sell the TracPipe product. **Exhibit 10 -** Albino Deposition, pp. 13:19-14:4 and 15:6-11. In light of this knowledge, Omega Flex was under a legal obligation to warn consumers of the potential for lightning to cause damage to its TracPipe CSST product. It is also clear that Omega Flex did not have a proper means of disseminating the warning to consumers, like Attuso, who were the ultimate users of the TracPipe CSST. Attuso had never heard of CSST prior to the fire that occurred on January 21, 2017 and was not aware CSST was installed in her home. Neither prior to nor after the fire did Attuso ever receive any warnings or communications, written or otherwise, from Omega Flex, Inc. regarding the CSST installed in his home. **Exhibit 8** - Attuso Affidavit.

Furthermore, Robert Torbin, Director of Codes and Standards for Omega Flex, testified in his deposition, in his capacity as a designated corporate representative of Omega Flex, that homeowners don't receive the Omega Flex Design and Installation Guide ("D&I Guide"). **Exhibit 11 -** Torbin Deposition**,** pp. 43:20-25 and 154:19-25. Mr. Torbin testified that the CSST product itself does not contain any warnings, but Omega Flex could have put a warning regarding bonding and grounding on the TracPipe material itself because Omega Flex controls the content of language written on the outside of the CSST. *Id.,* pp. 152:23-154:14.

Omega Flex has argued that Plaintiff has failed to provide evidence that the warnings that appear in the D&I Guide were ever read by the contractor responsible for the installation of the CSST in the Attuso resident. In *Safeco Ins. Co. v. Baker*, 515 So. 2d 655 (La. App. 1987), the Court adopted a rule that failure to read a label does not automatically preclude a claim for inadequate warning. *Safeco* holds the plaintiff has the burden of proving the warnings or instructions provided were inadequate. *Id.* at 657. Once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. *Id.* This presumption may be rebuffed by evidence "which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Id*. As set forth further below, Republic has raised sufficient evidence to demonstrate that the warnings and instructions contained in Omega Flex's D&I Guides were inadequate. Consequently, Defendant is not entitled to summary judgment on this issue.

## V.    THERE IS A QUESTION OF FACT REGARDING THE CLARITY AND EFFECTIVENESS OF OMEGA FLEX'S INSTRUCTIONS REGARDING BONDING AND GROUNDING OF ITS TRACPIPE CSST PRODUCT.

As a defense to Plaintiff's claims, Omega Flex has asserted that this loss would not have occurred had the contractor(s) responsible for the installation of the CSST in the Attuso residence bonded and grounded the CSST in compliance with the December 2005 or January 2005 D&I Guide. However, there are several problems with Omega Flex's position. First, Kelly Colwell of Integrity has concluded that the grounding/bonding of the gas system in the Attuso residence, per the NEC, was properly accomplished by the grounding through the two water heaters. **Exhibit 4** - Colwell Affidavit at Ex. 4, ¶ 20. The instructions in the D&I Guide regarding the use of a bonding clamp and so called "direct bonding" is confusing and can be read in two ways. One way to interpret the D&I Guide is to read it to mean that the use of the direct bonding scheme

must be followed. A second way to interpret the D&I Guide it to read it to mean that the requirements of the NEC must be met, and that the use of direct bonding is just one way of achieving bonding per the NEC, and that if this method is chosen the clamp should not be attached to the corrugated services. Colwell's understanding is the latter, and that compliance with the NEC is what is required. *Id*. at ¶ 22-25.

Further, in describing the confusion created by the language of the Omega Flex D&I Guide, Mr. Colwell points out that the Electric Code doesn't require direct bonding. *Id*. at ¶ 25. The D&I Guide gives deference to the Electric Code, and then the Electric Code describes how to bond. The confusion created by Omega Flex is that the installer can do the so-called direct bond or he can bond per the Electric Code. And either one is acceptable. *Id*. at ¶¶ 25-28.

The CSST installed in the Attuso residence was properly installed pursuant to the relevant National Electric Code and the relevant National Fuel Gas Code. *Id*. As an electrician, who would install the CSST, Mr. Colwell's understanding that Figure 4-21 of the D&I Guide, which illustrates a method of bonding CSST, was trying to show what Omega Flex thought were the requirements of the National Electric Code. *Id*. Mr. Colwell believes that by including Figure 4-21 in the D&I Guide, Omega Flex was trying to suggest bonding is an acceptable means of protecting against lightning, which, per the National Electric Code, it is not. *Id*. Mr. Colwell is critical of the manner in which Omega Flex has attempted to instruct installers as to the proper methodology for bonding its CSST. *Id*. Considering his training, education and experience as an electrician, and having personally installed bonding and grounding systems on numerous buildings and systems, if Mr. Colwell is confused by the instructions related to bonding and grounding in the Omega Flex D&I Guide, it is likely that the same instructions will be confusing to an electrical contractor attempting to follow those same instructions. In a failure-to-warn claim, the trier of fact can

consider the testimony of an expert regarding his own understanding and perception of instructions or a warning label in evaluating defendant's motion for summary judgment. This testimony did not constitute an expert assessment, and it was related to matters within the scope of his personal knowledge. *See Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 265(5th Cir. 2002), *cert. denied*, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 34 (U.S. 2002).

Therefore, it is a question of fact whether the warnings and instructions contained in Omega Flex's D&I Guide even apply, and, if they do, whether they clearly inform its users what is expected of them with regard to the proper method of bonding and grounding Omega Flex TracPipe CSST.

## VI.    THERE ISA QUESTION OF FACT REGARDING WHETHER BONDING OF TRACPIPE CSST PURSUANT TO THE D&I GUIDE WOULD HAVE PREVENTED THE FIRE AT THE ATTUSO RESIDENCE.

Omega Flex has raised as a defense in this matter, and touted by way of advertising and marketing, that bonding and grounding of yellow-jacketed TracPipe CSST makes it a safe product. However, the ability for bonding and grounding to serve as an effective means of protecting CSST from lightning induced damage has not been scientifically proven. Prior to 2007, Omega Flex had not performed any testing to validate bonding and grounding as an effective means of protecting TracPipe yellow jacketed CSST from damage due to lightning. **Exhibit 11** - Torbin Deposition**,** pp. 170:17-171:5.  In fact, Mr. Torbin, Director of Codes and Standards for Omega Flex, has admitted that the addition of a six-gauge bonding and grounding conductor, independent bonding clamp, to Omega Flex TracPipe CSST will not eliminate all dangers from lightning. *Id.,* p. 95:1-7. Also, Mr. Torbin is aware of situations where an indirect lighting strike caused perforation to yellow jacketed CSST, even though the system was properly bonded and grounded pursuant to Omega Flex's TracPipe D&I Guide. *Id.,* p. 95:20-25.  Ultimately, Mr. Torbin admitted that

bonding and grounding is not always an effective means of protecting yellow jacketed CSST from lighting, as it does not prevent all lightning house fires. *Id.,* pp. 96:25-97:7. Specifically, with regard to the December 2005 D&I Guide that was applicable to the installation of the CSST in the Attuso residence, Mr. Torbin testified that the D&I Guide does not provide any warnings with regard to the fact that CSST can be bonded and grounded and still have arc damage due to lightning and proximity to other metallic systems. *Id.,* pp. 82:18-83:9.

In fact, testing conducted by Mr. Johnie Spruiell, one of Plaintiff's experts, has concluded that bonding and grounding is not an effective means of protecting TracPipe CSST from lightning induced damage. Mr. Spruiell opined that the Attuso residence is a house in which -- in fact, it quite well might not have helped at all if that direct bonding had been present per the D&I Guide. **Exhibit 12** - Spruiell Affidavit. The results of the testing performed by Mr. Spruiell and his colleagues at Integrity demonstrates that bonding TracPipe CSST in accordance with the D&I Guide does not always prevent electrical arcing from creating a perforation in the CSST. Through the Integrity testing they found that not only would arcing occur between the bonded CSST and the crossing over equipment ground conductor, but the arc event was also capable of producing perforations in the gas piping. These perforations occurred at numerous distances along the length of gas piping, with the nearest being as close as ten feet from the bonding clamp connection. The characteristics of the holes created in our testing are consistent with hole in this matter, as well as holes in the many other CCST-related fore losses this firm has investigated. **Exhibit 12**, ¶¶ 8-9.

It is clearly a question of fact whether bonding and grounding is an effective means of protecting CSST from damage due to lightning, and whether bonding would have made a difference in this case.

## VII.    OMEGA FLEX HAS A STATUTORY DUTY TO WARN CONSUMERS OF DANGERS AFTER THE SALE OF ITS PRODUCT

The Louisiana Product Liability Act ("LPLA") states:

> A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. R.S. § 9:2800.57(A).  The Act further provides:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. R.S. § 9:2800.57(C).

"To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl*, 283 F.3d at 264.  Proving a design defect or a "construction or composition" defect is not a prerequisite to establishing a failure-to-warn claim; even if a product is not defectively designed or constructed, a manufacturer may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage. *Id.* at 261.  For purposes of La. R.S. §9:2800.57, in considering whether a warning in an instruction manual is inadequate because it should have been placed on the product itself, a court must consider the nature and severity of danger to be warned against, likelihood that the product will be used by persons who have not read the manual, practicality and effectiveness of placing the

warning on the product itself, and any other relevant factors. *Jaeger v. Auto. Cas. Ins. Co.*, La. App. 95-2448, 682 So. 2d 292, 297 (La. App. 4 Cir. 1996), *cert. denied*, La. 96-2715, 688 So. 2d 498, 1997 La. LEXIS 479 (La. 1997).

Before the LPLA became effective in September 1988, a products liability claimant had to show that "his damage resulted from a condition of the product that made it unreasonably dangerous to *normal use*." *Bloxum v. Bloxum*, 512 So. 2d 839, 843 (La. 1987) (emphasis added) (citations omitted). "Normal use" included "all intended uses, as well as all foreseeable uses and misuses of the product." *Id.* (citations omitted). The Louisiana legislature replaced the "normal use" test with the LPLA's "reasonably anticipated use" requirement. The legislature apparently intended the new "reasonably anticipated use" standard to be narrower in scope than the "normal use" standard it replaced. *Kampen v. American Isuzu Motors*, 119 F.3d 1193, 1197 (5th Cir. 1997); *see also Dunne v. Wal-Mart Stores, Inc.*, 679 So. 2d 1034, 1037 (La. App. 1996); *Daigle v. Audi*, 598 So. 2d 1304, 1307 (La. App. 1992); *Walker v. Babcock Indus., Inc.*, 582 So. 2d 258, 259 (La. App. 1991). The parameters of the reasonably anticipated use test nevertheless remain imprecise. The Louisiana courts have frequently defined "reasonably anticipated use" in terms of what it is not, contrasting a reasonably anticipated use with one that is merely "conceivable." *Delphen v. Depart. of Transp. & Dev.*, 657 So. 2d 328, 333 (La. App. 1995) ("The more restrictive scope of liability [under the reasonably anticipated use standard] was meant to avoid prior confusion because virtually any conceivable use is foreseeable." (citation omitted)). As one of the LPLA's drafters explained: "'Reasonably anticipated use' . . . conveys the important message that the manufacturer is not responsible for accounting for every conceivable foreseeable use." John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 586 (1989). Both the language of the LPLA and the cases that have interpreted

"reasonably anticipated use" suggest that the statute is aimed principally at the manner in or method by which the claimant operated or handled the product. The statute defines "reasonably anticipated use" in terms of the "use or handling" of a product. La. R.S. § 9:2800.53(7).

Whether a particular warning or instruction is adequate is a question for the trier of fact. *Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1259 (La. 2007). Although a manufacturer markets a product for an intended use, in considering various instructions and warnings, a manufacturer may not simply close his eyes to hazards associated with foreseeable misuse of the product. When product misuse and its attendant risks are reasonably foreseeable, the manufacturer is in the best position to avoid product related injuries by giving an adequate warning. *Conder v. Hull Lift Truck, Inc.*, 405 N.E.2d 538, 546 (Ind.Ct.App. 1980). The determination of whether a warning is adequate depends upon a balancing of considerations including, among other factors, the severity of the danger, *Marshall v. Beno Truck Equip., Inc.*, 481 So.2d 1022, 1032 (La. App. 1st Cir. 1985) writ den., 482 So.2d 620 (1986); and the likelihood that the warning will catch the attention of those who will foreseeably use the product and convey the nature of the danger to them. *Andries v. General Motors*, 444 So.2d 1180, 1183 (La. 1983). An essential element of the plaintiff's cause of action for failure to adequately warn of a product's danger is that there be some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered. *Hebert v. Brazzel*, 403 So.2d 1242, 1244 (La. 1981). Once a plaintiff proves that the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause in fact burden is assisted by a presumption: when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions. *Reyes v. Wyeth Lab.*, 498 F.2d 1264, 1281-82 (5th Cir. 1974); *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 523 (5th

Cir. 1984). The presumption, may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances. *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1986). If the manufacturer had notice of a prior defect or problem, the manufacturer, with knowledge that it's product could malfunction, acquired a duty to warn the product user of said danger. *Am. Cent. Ins. Co. v. Terex Crane*, La. App. 2003-0279, 861 So. 2d 228 (La. App. 1 Cir. 2003), *writ denied*, La. 2004-0327, 869 So. 2d 881 (La. 2004).

Under Louisiana law, the unreasonableness of the plaintiff's conduct is taken into account by a system of comparative fault. S*ee Bell v. Jet Wheel Blast,* 462 So. 2d 166 (La. 1985). The claimant's comparative fault provides the manufacturer with an affirmative defense that may well reduce the claimant's recovery. But if a product is unreasonably dangerous in a use that the manufacturer could reasonably anticipate, the fact that the claimant has put himself or herself in the zone of danger created by that defective product should not bar the claimant's recovery. *Cf. Terrebonne v. Goodman Mfg. Corp.*, 687 So. 2d 124 (La. App. 1996). Applying the reasonably anticipated use element to preclude recovery by a negligent plaintiff would "inject" a contributory negligence bar "through the back door." *See Murray v. Ramada Inns, Inc.*, 521 So. 2d 1123, 1136 (La. 1988) (*quoting Murray v. Ramada Inn, Inc.*, 821 F.2d 272 (5th Cir. 1987)) (internal quotation marks omitted). If the Louisiana legislature had intended the reasonably anticipated use requirement to function as a contributory negligence bar, it could have said so. Here, Omega Flex argues that the CSST was not properly bonded in accordance with Omega Flex instructions. This assertion, if true, cannot bar Plaintiff's claims as Omega Flex argues.

Moreover, the Supreme Court of Louisiana has recognized that it can be reasonably expected that ordinary people will sometimes act without reasonable care. *See Levi v. Southwest*

*La. Elec. Membership Co-op.*, 542 So. 2d 1081, 1086 (La. 1989) (explaining that a power company's placement of electrical lines "may demand precautions against 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated'")(*citing Murphy v. Great Northern Ry. Co.*, 2 Ir. Rep. 301 (1897) other citations omitted). The issue under the LPLA is not whether the claimant engaged in a reasonable use of the product, but rather whether the manufacturer should have reasonably anticipated that an ordinary person would use the product in a particular manner.

With the knowledge of over 340 claims of lightning induced damage to its TracPipe CSST, Omega Flex voluntarily participated in, sponsored, and actively engaged in the National Yellow CSST Safety Campaign sponsored by the National Associate of State Fire Marshals. The purpose of the National Yellow CSST Safety Campaign was to give notice to homeowners who already had CSST installed in their homes. **Exhibit 11** - Torbin Deposition**,** p. 162:7-20. Unfortunately, Omega Flex has absolutely no means of tracking in which homes its CSST products are installed, or to have the National Yellow CSST Safety Campaign target to a specific homeowner. *Id.,* pp. 158:19-159:11; 159:22-160:2 and 162:22-163:8. The National Yellow CSST Safety Campaign was undertaken in every state. *Id.,* p. 163:9-12. Clearly, the National Yellow CSST Safety Campaign was not successful in disseminating information about the dangerous nature of yellow jacketed TracPipe CSST, because Attuso never received any warnings, or any communications for that matter, from Omega Flex.

Applying Louisiana law to the facts of this case, Omega Flex had a duty to warn Attuso after she installed and purchased the CSST of its dangers, specifically that fires could be started by perforations in the CSST due to lightning strikes. In addition, by engaging in the National Yellow CSST Safety Campaign, Omega Flex clearly had knowledge of these dangers and

unsuccessfully took on a duty to warn consumers like Attuso of the dangers of its TracPipe CSST product and its propensity to be damaged by lightning and the need for bonding and grounding. The fact that the Safety Campaign was totally ineffective in reaching Attuso raises a fact question for the jury to decide whether or not Omega Flex acted reasonably and with due care in its efforts to provide warnings to Attuso. Consequently, summary judgment on this issue is not appropriate and must be denied.

## CONCLUSION AND PRAYER

Omega Flex's motion for summary judgment should be denied. Republic has presented sufficient evidence to raise a number of questions of fact regarding the cause of the fire, whether the CSST was properly bonded and grounded, whether a fire would have likely been started even if the CSST was bonded and grounded in accordance with the Omega Flex instructions, and whether the warnings and instructions provided by Omega Flex were sufficient are questions that should be left for the jury to decide.

WHEREFORE, Plaintiff, Republic Fire and Casualty Company as Subrogee of Monique Attuso, respectfully requests that this Honorable Court deny the Defendant's Motion for Summary Judgment.

Respectfully Submitted By:
**Hannah, Colvin & Pipes, LLP**
10626 Timberlake Drive
Baton Rouge, LA 70810
Telephone (225) 766-8240
Facsimile (225) 766-5546
Email: wrpipes@hcpllp.com
baydell@hcpllp.com

_____*/s/ W. Ransom Pipes*_____
W. Ransom Pipes (Bar No. 17748)
Blaine T. Aydell (Bar No. 34430)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date forwarded a copy of the above and foregoing pleading to all counsel of record by depositing same in the U.S. Mail, postage-prepaid, and properly addressed on this 14th day of October, 2019.


_____*/s/ W. Ransom Pipes*_____
W. Ransom Pipes