**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

MONIQUE ATTUSO, et al.,  CIVIL ACTION
    *Plaintiff*

VERSUS  18-157-SDD-RLB

OMEGAFLEX, INC.,
& AUDUBON PLUMBING, INC.
    *Defendants*

## RULING

Before the Court is the Defendant, Omega Flex, Inc.'s ("Omega Flex") *Motion to Exclude Certain Opinions and Testimony of Plaintiff's Experts*,[1] Derek Geer ("Mr. Geer"), John Spruiell ("Mr. Spruiell"), and Kelly Colwell ("Colwell") (collectively "Integrity experts"). Plaintiff, Republic Fire and Casualty Insurance Co. ("Republic"), opposes the Motion[2].

**I.  FACTUAL BACKGROUND**

This case presents a subrogation claim by Republic resulting from Republic's payment of a property loss claim that arose as the result of a house fire that consumed the residence of Republic's insured, Monique Attuso ("Attuso").[3] Plaintiff alleges that a fire broke out at the Attuso residence on January 21, 2017 which destroyed the residence and its contents.[4] Ultimately Republic adjusted the Attuso claim as a total loss.

---

[1] Rec. Doc. 58.
[2] Rec. Doc. 71.
[3] Rec. Doc. 1-1 ¶3.
[4] *Id.*
59813

According to the record, Attuso and her husband Ricky Rodriguez reported that lightning struck the Attuso residence at approximately 3:30am on January 21st, 2017:

> [The homeowner's family] heard a "huge" lightning strike. They lost power, saw sparks from the living room television, and saw sparks appear to fall from the roof as they looked through the kitchen window. They found a small fire underneath the kitchen sink that was easily extinguished with water. Mr. Rodriguez searched the rest of the house, including closets and attic areas and found no other evidence of fire. He described waiting 30-45 minutes longer and inspecting the house again. With the electricity off and no other evidence of fire in inspected areas, they decided to go to bed. Around 7am kids went upstairs to notice smoke coming from the 2nd floor. Mr. Rodriguez said that the wall to the right of the stairway landing was also 'hot' to the touch with smoke visible. They called the fire department and grabbed some personal belongings before exiting the house The [homeowners] stated that electricity was off at their house and detached shop the entire time after the lightning strike until the following day when Entergy, the electric utility provider, came out to re-energize.[5]

The only remaining claim in this litigation is the subrogation claim by Republic against Omega Flex. The individual plaintiff's claims (Republic's insureds) have been settled and dismissed from this suit.[6]

Republic contends that "the fire originated in the interstitial space between the first and second floors of the Attuso residence and was caused by defects associated with the gas piping which was designed, manufactured and sold by Defendant. Plaintiff alleges that Omega Flex's product, corrugated stainless steel tubing (CSST), was defective under the terms and provisions of the Louisiana Product Liability Act (LSA-RS 9:2800.51, et seq.) in that it was unreasonably dangerous in design, manufacture, and warranty and for

---

[5] Rec. Doc. 58-2 p. 2.
[6] *See* Rec. Doc. 92.
59813

Page 2 of 10

failure to provide an adequate warning. Specifically, Plaintiff alleges that the CSST lacks adequate protection from lightning strikes, direct or indirect, that can and do compromise the integrity of the CSST causing gas leaks and resulting fires."[7]

Republic maintains that "Omega Flex has had actual knowledge since the year 2000 that its yellow jacketed TracPipe® brand CSST was susceptible to lightning induced failure. Specifically, the stainless-steel tubing is simply too thin walled to withstand the electrical current from a direct or indirect lightning strike, and the electrical current will find alternative paths to ground which results in an arcing event between the CSST and nearby metallic objects. The arcing event results in a hole or perforation in the thin-walled CSST which allows gas to escape. The fugitive gas is then ignited by the arcing event resulting in a fire. There are safer alternative designs, such as Flash Shield, a competitor's CSST that incorporates a shunt via an aluminum mesh that runs the length of the CSST. Furthermore, black iron pipe is also a safer alternative design because testing has demonstrated that black iron pipe is capable of withstanding significant more current (over 250 coulombs) than TracPipe® brand CSST without the creation of holes or perforations. Moreover, in 2006, Omega Flex placed on the open market an alternative product, CounterStrike, which was designed in an attempt to withstand the effects lightening [sic] was having on the yellow jacketed TracPipe® CSST product."[8]

Defendant Omega Flex denies that its product caused the subject fire and resulting damages. Omega Flex "contends that bonding and grounding of its' TracPipe® yellow jacketed CSST renders it a safe product."[9] Defendant maintains that "there were multiple

---

[7] Rec. Doc. 92 p. 4.
[8] Rec. Doc. 92 p. 4-5.
[9] *Id.* at p. 5.
59813

fires at the Attuso home which spread and eventually ignited gas at Omega Flex's CSST."[10] Omega Flex submits that the installer, Audubon Plumbing, "improperly install[ed] the subject CSST by failing to directly bond the CSST to the home's grounding electrode" and that had "the CSST been properly installed (i.e. bonded) an arcing event would not have occurred at the CSST and the fire could not have occurred".[11]

## II. THE SUBJECT MOTION IN LIMINE[12]

Defendant Omega Flex moves the Court to exclude the following specific opinions of the Integrity experts:[13]

1. The fire at issue would still have occurred if the CSST was bonded; and

2. The applicable Omega Flex Design Guide and Installation Instruction ("D&I Guide") is ambiguous or confusing.

Defendant contends that the Integrity experts should be prohibited from rendering the challenged opinions because they are unsupported by reliable methodology, and Defendant argues that Colwell is not qualified to render an opinion on applicable standards regarding bonding and the confusion created by the Omega Flex instructions.

### A. Bonding Opinion Testimony

Defendant explains that the "risk of CSST is that it is allegedly more susceptible to perforation from an electrical arcing event than black iron pipe resulting from a lightning strike/event."[14] Defendant further explains that "to combat the purported risk due to lightning, CSST manufacturers, including Omega Flex, require that its product be bonded

---

[10] Rec. Doc. 92 p. 5.
[11] *Id.* at p. 5.
[12] Rec. Doc. 58.
[13] *See* Rec. Doc. 58-2 (Integrity Experts Report).
[14] Rec. Doc. 58 p. 11.
59813

to the building's grounding electrode."[15] According to Defendant's expert, the CSST in the Attuso home was not bonded to the home's grounding electrode.[16] Omega Flex's defense to liability is that the CSST "installation was not performed in accordance with the applicable codes at the time and . . . there was no electrical bond" which according to Omega Flex was the specific safety measure which would have protected against the harm encountered by the Attusos.[17]

In response to this defense, Plaintiff's Integrity expert opines that the risk encountered in this case, namely fire due to failure of the CSST from arcing due to lighting strike, would have occurred notwithstanding bonding of the CSST.[18] The Integrity experts performed lab testing to demonstrate the likelihood of failure even when the CSST is bonded.

Defendant argues that the experiment that Integrity did to test the susceptibility of bonded CSST to lightning strikes was "entirely irrelevant given Integrity's failure to apply their tests to the facts involved in this action."[19] Defendant challenges the reliability of the testing methodology used by the Integrity experts arguing that their lab experiments "in absolutely no way resemble the configuration of the Attuso home."[20] Defendant argues that the experiment conditions did not represent the actual conditions at the Attuso home and are therefore unreliable.

For example, Defendant points out that:

---

[15] Rec. Doc. 58 p. 11.
[16] Rec. Doc. 57-4, Exhibits D & E. (The "goal of direct bonding of CSST is to prevent an electrical arcing event from melting a hole in the CSST.") Rec. Doc. 57-4 p. 281 ¶7 (Kytomaa Affidavit, para. 7).
[17] Rec. Doc. 58 p. 12.
[18] *See* Rec. Doc. 63-13.
[19] Rec. Doc. 58 p. 19.
[20] *Id.* at p. 30.
59813

- Integrity pin-pricked the outer sheathing of the CSST as part of its experiment, Defendant argues that there is "no information that the CSST at the Attuso home was pinpricked".[21]
- "the capacitor array used in the testing was only capable of discharging 17 kv, which is much lower than voltages generated by lightning, and required pinpricking of the CSST"[22]
- "Integrity utilized a short branch circuit wire which in no way relates to the lengthy exhaust duct at the Attuso home".[23]
- "By pinpricking the CSST and the opposing cable, the Integrity witnesses created a pathway that encouraged an arcing event when such a condition did not exist at the Attuso home."[24] "By creating a more preferential pathway to ground, Integrity created a situation where an arcing event was likely to occur."[25]

Plaintiff responds that "testing conducted by Integrity has concluded that bonding and grounding is not an effective means of protecting TracPipe CSST from lightning induced damage."[26] Responding to the Defendants relevance objection, Plaintiff argues that "[i]t is clearly a question of fact whether bonding and grounding is an effective means of protecting CSST from damage due to lightning, and whether bonding would have made a difference in this case."[27] The Court finds that the proposed opinion testimony by the

---

[21] Rec. Doc. 58 p. 19.
[22] *Id.*
[23] *Id.* at p. 32.
[24] *Id.* at p. 19.
[25] *Id.* at p. 20.
[26] Rec. Doc. 71 p. 21.
[27] *Id.* at p. 22.
59813

Integrity experts as to the effectiveness of bonding and grounding in preventing the type of loss presented in this case is relevant.[28] It addresses a material fact at issue and will assist the tries of fact to understand an issue that is not within the average lay persons common knowledge or understanding.[29]

On the reliability challenge, Plaintiff responds that "this contention is without merit. During their investigation of the fire, the Integrity Experts followed the reliable and widely accepted principles and methods described in NFPA 921".[30] Plaintiff contends that "Integrity bonded/grounded CSST gas piping in the manner depicted and described in Section 4.10 of the Omega Flex (DEI Guide). They subjected this CSST to electrical impulse currents at voltages well below that of a typical lightning strike."[31] In fact, in unrelated prior lab testing, Omega Flex utilized the pin prick method to breach the CSST jacket in a "simulated lightning test."[32]

The Court is persuaded by the Plaintiff's argument that the "Defendant's expert, Kytomaa, testified in another case to having pinpricked the jacket on CSST that was the subject of his testing. As Dr. Kytomaa explained, the jacket on the CSST is pinpricked to provide a localized decrease in the dielectric strength of the jacket so that testing on CSST can be conducted at lower voltages than would be generated by a lightning strike."[33] The

---

[28] FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[29] "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, *Expert Testimony*, 5 VAND.L.REV. 414, 418 (1952); FED. R. EVID. 702.

[30] Rec. Doc. 71 p. 13. Plaintiff also directs the Court to *State Farm Fire and Casualty v. Omega Flex*, Civil Action 4:16-cv-00387-JLH, on the docket of United States District Court Eastern District of Arkansas, wherein a similar *Motion in Limine* which challenged the reliability of the Integrity experts' methodology was denied.

[31] *Id.* at p. 15.

[32] *Id.*; Rec. Doc. 71-4

[33] Rec. Doc. 71 p. 16 (internal citations to the Kytomaa deposition omitted).

record demonstrates that Omega Flex has utilized the pin prick methodology in its own testing. The Court rejects the argument that the methodology used is inherently unreliable or flawed.[34] Discrepancies or variations between the lab simulations and the actual field conditions can be pointed out on cross-examination and by counter-posing expert testimony. The Court denies Omega Flex's *Motion* to exclude opinion testimony regarding whether the fire at issue would still have occurred if the CSST was bonded.

### B. Opinion Testimony regarding the D&I Guide

Defendant, Omega Flex, moves to exclude testimony that the Omega Flex Design Guide and Installation Instruction ("D&I Guide") is ambiguous or confusing, on the grounds that Integrity expert Colwell[35] is not qualified to render such an opinion. Defendant argues that Colwell's opinion that installation instructions relating to bonding of the CSST in the D&I are confusing or unclear is based on Colwell's "assumptions and/or personal beliefs [] rather than any scientific or recognized methodology."[36]

Colwell opines that:

> [t]he grounding/bonding of the gas system in the Attuso residence, per the NFPA 70: National Electrical Code (NEC), was properly accomplished by attachment of equipment grounding conductors at the two tankless water heaters. The instructions provided in Omega Flex's December 2005 Design and Installation Guide (D&I Guide) - Section 4.10 depicting the use of a bonding clamp to establish, what the manufacturer has termed as "direct bonding." This term is non-standard, undefined, and confusing. An electrical bond connection is intentional and "directly" made when gas appliances are physically connected to the grounding electrode system. The instructions as

---

[34] *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) ("[w]hen a litigant clearly believes a certain methodology is acceptable as shown by his or her own expert's reliance on that methodology, it is disingenuous to challenge an opponent's use of that methodology.").
[35] Mr. Colwell is being offered by Plaintiff to offer testimony and/or opinions relating to the D&I Guide, and the sufficiency of the instructions, particularly relating installation of the CSST, within the D&I Guide.
[36] *Id.* p. 21.

59813

written could be interpreted in at least two ways. First, the "direct bonding" scheme must be followed; second, the requirements of the NEC must be met, and that the "direct bond" is just one way of achieving bonding, and if this method is chosen the clamp should not be attached to the corrugated portion of the tubing. As a licensed electrician with 20-plus years of experience in construction and interpreting the National Electrical Code, I interpret the latter, and that simply complying with the National Electrical Code was what was required for bonding of the gas piping system. While the National Electrical Code allows the bonding as described in the D&I Guide, it clearly does not require a "heavy gauge bond wire" as stated in the D&I Guide. The D&I Guide seems to defer to the National Electrical Code when stating "The bonding is a requirement of the National Electrical Code," but in fact, it was not.[37]

In other words, according to Colwell, the Omega Flex D&I instructions regarding bonding can be read to require NEC standard grounding installation or something more.

By the plain language of FRE 702 an expert may be qualified by "scientific, technical, or other specialized knowledge".[38] Colwell is a licensed master electrician and electrical contractor. He has worked as an expert in the electrical industry as defined in Section 15.5 of NFPA 921, *Guide for Fire and Explosion Investigations* (2017), and provided technical assistance to fire investigators. He is a qualified installer of a different brand of CSST and has investigated over 200 fires involving CSST since 2005. Colwell has presented at fire investigation seminars and conferences in Louisiana, Arkansas, Oklahoma, and Texas. He has presented on the topic of CSST at the National Association of State Fire Marshals conference and the Texas Professional Real Estate Inspectors

---

[37] Rec. Doc. 71-4, ¶25.
[38] FED. R. EVID. 702.
59813

Association. He contributed to two published papers on the topic of CSST failures from lightning and roofing fasteners.[39]

The Court finds that by virtue of his training and experience, Colwell is qualified to provide opinion testimony on how a CSST installer might interpret the bonding installation instructions in the Omega Flex D&I Guide. The Defendant's *Motion in Limine* on this point is DENIED.

### III. CONCLUSION

For the above reasons, Omega Flex's *Motion in Limine*[40] is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on April 6, 2020.

*Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[39] *See* Rec. Doc. 71-4.
[40] Rec. Doc. 58.

59813