UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MONIQUE ATTUSO, ET AL.                              CIVIL ACTION

VERSUS                                              18-157-SDD-RLB

OMEGAFLEX, INC., ET AL.

**RULING**

The matter before the Court is the *Motion for Summary Judgment*[1] by Defendant Omega Flex, Inc. ("Omega Flex"). Plaintiff, Republic Fire & Casualty Insurance Co., ("Republic") filed an *Opposition*[2] to this motion. The Court has jurisdiction over this matter under 28 U.S.C. § 1332.[3] For the following reasons, the Court finds that Omega Flex's *Motion*[4] shall be GRANTED in part and DENIED in part.

**I.    FACTUAL BACKGROUND**

This case presents a subrogation claim by Republic resulting from Republic's payment of a property loss claim that arose as the result of a house fire that consumed the residence of Republic's insured, Monique Attuso ("Attuso").[5] A fire broke out at the Attuso residence on January 21, 2017, which destroyed the residence and its contents.[6] Republic contends that the corrugated stainless steel tubing ("CSST" or "TracPipe") produced by Omega Flex, "which supplied propane gas to various parts of the home, was

---

[1] Rec. Doc. 57.
[2] Rec. Doc. 63.
[3] *See* Rec. Doc. 1-1 ¶2-5.
[4] Rec. Doc. 57.
[5] Rec. Doc. 1-1 ¶3.
[6] Rec. Doc. 57-2 ¶1; Rec. Doc. 63 p. 5.
59932

compromised after the lightning strike when electrical energy passed or arced across the ridges of the CSST, puncturing the CSST's wall."[7] Republic asserts that "propane gas leaked into the space between the floor and the ceiling of the Attuso Residence and was ignited 'from a competent ignition source.'"[8] Omega Flex contests these factual allegations and argues that the CSST was compromised because it was not bonded correctly to a grounding electrode upon installation.[9]

Before the Court now is Omega Flex's *Motion for Summary Judgment.*[10] In Omega Flex's own words, "this Motion is primarily focused on the lack of bonding and/or improper use of the CSST."[11]

## II. LAW AND ANALYSIS

### A. Rule 56 Motion for Summary Judgment

In reviewing a party's Motion for Summary Judgment, the Court will grant the Motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[12] This determination is made "in the light most favorable to the opposing party."[13] The Court cannot engage in weighing the evidence or determining credibility, as those functions belong to a jury rather than the Court; thus, "[the Court] must disregard all evidence favorable to the moving party that the jury is not required to believe."[14] A party moving for summary judgment "must 'demonstrate the absence of a

---

[7] *Id.* at ¶2 (citing Rec. Doc. 1-1 ¶6-7).
[8] *Id.* at ¶3 (citing Rec. Doc. 1-1 ¶7).
[9] Rec. Doc. 63 p. 9.
[10] Rec. Doc. 57.
[11] Rec. Doc. 57-1 p. 7.
[12] FED. R. CIV. P. 56(a).
[13] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[14] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000).
59932

genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[15] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[16] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[17]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[18] All reasonable factual inferences are drawn in favor of the nonmoving party.[19] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[20] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the Plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[21]

---

[15] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[16] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[17] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[18] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[19] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[20] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[21] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

59932

### B. Louisiana Products Liability Act

The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products. The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[22] Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[23] Omega Flex's *Motion* challenges the third and fourth elements of Republic's products liability argument. The Court first considers the reasonably anticipated use element as "the threshold LPLA element."[24]

#### 1. Reasonably Anticipated Use

The Louisiana Supreme Court in *Payne v. Gardner* provided an in-depth explanation of what constitutes a "reasonably anticipated use":

> A "reasonably anticipated use" of the product is defined as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La.Rev.Stat. 9:2800.53(7). Notably, this definition is narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonably

---

[22] LA. REV. STAT. § 9:2800.54(A).
[23] *Ayo v. Triplex, Inc.*, 457 Fed. App'x 382, 385-86 (5th Cir. 2012) (citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing LA. REV. STAT. § 9:2800.54(A)).
[24] *Matthews v. Remington Arms Co.*, 641 F.3d 635, 641 (5th Cir. 2011).
59932

foreseeable uses and misuses of the product," see *Bloxom v. Bloxom*, 512 So.2d 839, 841 (La.1987)(definition of "normal use"), but, like "normal use," what constitutes a reasonably anticipated use is ascertained from the point of view of the manufacturer at the time of manufacture. *Daigle v. Audi of America, Inc.*, 598 So.2d 1304, 1307 (La.App. 3d Cir.), *writ denied*, 604 So.2d 1306 (La.1992). Unlike its "normal use" counterpart, though, the use of the words "reasonably anticipated" effectively discourages the fact-finder from using hindsight. *Id.*

"Reasonably anticipated use" also effectively conveys the important message that "the manufacturer is not responsible for accounting for every conceivable foreseeable use" of its product. [. . .] *Dunne v. Wal–Mart Stores, Inc.*, 95–2047, p. 4 (La.App. 1 Cir. 9/10/96), 679 So.2d 1034, 1037. [. . .] Likewise, "knowledge of the potential and actual intentional abuse of its product does not create a question of fact on the question of reasonably anticipated use." *Butz v. Lynch*, 99–1070 (La.App. 1 Cir. 6/23/00), 762 So.2d 1214, 1218, *writ denied*, 00–2660 (La.11/17/00), 774 So.2d 980.[25]

Omega Flex argues that the method used to install the CSST was not a reasonably anticipated use. According to Omega Flex, "the CSST at the Attuso home was not bonded in accordance with the product's explicit instructions and warnings. The bonding was required to help prevent exactly what Republic alleges in this matter; namely, that electrical arcing from lightning damaged the CSST and caused a fire."[26] Omega Flex asserts that "had the CSST been properly installed, an arcing event would not have occurred."[27]

---

[25] *Payne v. Gardner*, 2010-2627 (La. 2/18/2011), 56 So.3d 229, 231.
[26] Rec. Doc. 57-1 p. 16.
[27] *Id.*
59932

Omega Flex analogizes the present case to *Matthews v. Remington Arms Co.*, where a third party removed a bolt-assembly pin from a rifle and did not re-install the pin, causing the plaintiff in the case to be injured by an explosion upon firing the rifle.[28] The Fifth Circuit held that the failure to re-install the pin, followed by the firing of the rifle without the pin, was not a reasonably anticipated use.[29] That decision was largely based on the rationale that "'[t]he LPLA requires a link between damages and reasonably anticipated use . . . [i]f damages are linked to a product misuse (i.e., one that is not reasonably anticipated), then those damages are not recoverable under the Act.'"[30] Omega Flex argues that the improper bonding of the CSST in the Attuso home constitutes a similar unanticipated use.

Omega Flex's argument is organized as follows: the Design Guide and Installation Instructions ("D&I Guide") directed the installer to attach a bonding clamp to the gas piping to ground the system.[31] Additionally, the D&I Guide "expressly warned that '[t]he installation instructions and procedures contained in this Design Guide must be strictly followed in order to provide a safe and effective fuel gas piping system'" and the CSST "'must only be installed by a qualified person who has been trained or other wise qualified through the TracPipe Gas Piping Installation Program.'"[32] Further, Omega Flex contends that "it is undisputed that the CSST in the Attuso Home was improperly bonded."[33] Based on these facts, and considering Republic's experts and evidence, Omega Flex maintains

---

[28] 641 F.3d at 638.
[29] *Id.* at 647.
[30] *Id.* (citing *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 316 (5th Cir. 1998)).
[31] Rec. Doc. 57-1 p. 18.
[32] *Id.* (citing Rec. Doc. 57-2 p. 15; Rec. Doc. 57-3 p. 3).
[33] *Id.* at p. 19 (citing Rec. Doc. 57-2 pp. xiv, 56; Rec. Doc. 57-4 ¶21).
59932

that there is no basis for the conclusion that the CSST would have developed a hole had the system been properly grounded[34] or that Omega Flex knew or had reason to know that its warnings and instructions were ineffective.[35] Omega Flex offers the affidavit of Dr. Harri Kytomaa ("Kytomaa") as evidence that proper bonding would have prevented the formation of a hole.[36] In short, Omega Flex's argument is that improper bonding is not a reasonably anticipated use of its product.

In response, Republic argues that first, as per expert testimony from Kelly Colwell ("Colwell"), "the grounding/bonding of the gas system in the Attuso residence . . . was accomplished by the grounding through the two water heaters."[37] In other words, grounding through the water heaters—while not being directly bonded—was sufficient according to Republic. Republic also contends that the D&I Guide's bonding instructions are "confusing" and can be read in such a way as to convey that "the use of direct bonding is just one way of achieving bonding" and "that if this method is chosen the clamp should not be attached to the corrugated services."[38] Colwell also states that the Electric Code does not require direct bonding, and since the D&I Guide defers to the Electric Code, grounding through the water heaters was acceptable.[39] Essentially, Republic's position is that "the installer can do the so-called direct bond or he can bond per the Electric Code. And either one is acceptable."[40]

---

[34] Rec. Doc. 57-1 p. 19.
[35] *Id.*
[36] *Id.* at p. 20; *see also* Rec. Doc. 57-4.
[37] Rec. Doc. 57-1 p. 15 (citing Rec. Doc. 63-5 ¶20).
[38] *Id.*
[39] *Id.* at p. 16 (citing Rec. Doc. 63-5 ¶25).
[40] *Id.* (citing Rec. Doc. 63-5 ¶25-28).
59932

The Court finds that Republic's position, supported by Colwell's affidavit, presents a genuine issue of material fact as to whether the way the CSST was bonded constitutes a reasonably anticipated use. Omega Flex's assertion that "it is undisputed that the CSST in the Attuso Home was improperly bonded"[41] is not entirely accurate; Republic clearly maintains that the CSST was bonded in a way that the D&I Guide deems to be acceptable, as supported by Colwell's interpretation of the instructions. Colwell, who examined the home, specifically states in his affidavit that "[t]he gas system was bonded via the equipment ground connections at two tankless water heaters"[42] according to industry standards as set by the National Electric Code,[43] the National Fuel Gas Code, and the International Fuel Gas Code.[44] Colwell states that "[a]s a tested, licensed, and practicing master electrician and electrical contractor . . . [he] interpret[s] section 4.10 of the D&I Guide as describing that gas piping system [sic] needs to be bonded according to the requirements of the National Electric Code as specifically stated in their last sentence, and the diagram is only an example of how bonding gas piping can be achieved."[45]

---

[41] *Id.* at p. 19 (citing Rec. Doc. 57-2 pp. xiv, 56; Rec. Doc. 57-4 ¶21).
[42] Rec. Doc. 63-5 ¶20.
[43] Specifically, Colwell references Section 250.104b from the National Electric Code, which states that "[w]here installed in or attached to a building or structure, metal piping system(s), including gas piping, that is likely to become energized shall be bonded to the service equipment enclosure, the grounded conductor at the service, the grounding electrode conductor where of sufficient size, or to the one or more grounding electrodes used. The bonding jumper(s) shall be sized in accordance with 250.122, using the rating of the circuit that is likely to energize the piping system(s). The equipment grounding conductor for the circuit that is likely to energize the piping shall be permitted to serve as the bonding means. The points of attachment of the bonding jumper(s) shall be accessible." Rec. Doc. 63-5 p. 74.
[44] Rec. Doc. 63-5 ¶22.
[45] *Id.* at ¶24. The D&I Guide at Section 4.10 provides, in pertinent part: "1. The piping system is not to be used as a grounding conductor or electrode for an electrical system. In accordance with The Nation Fuel Gas Code NFPA 54/ANSI Z223, 'each above ground portion of a gas piping system upstream from the equipment shutoff valve shall be electrically continuous and bonded to any grounding electrode, as defined by the *National Electrical Code*, ANSI/NFPA 70 1999 Edition.' 2. For bonding of the *TracPipe* system, a bonding clamp must be attached to the brass AutoFlare fitting adapter (adjacent to the pipe 59932

While the D&I Guide states that its provisions "must be strictly followed," Colwell's affidavit supports Republic's argument that the provision of the D&I Guide may be read in such a way as to permit the bonding method utilized in the installation of the CSST system in the Attuso home. Based on the language of the D&I Guide, and as supported by Colwell's testimony, a reasonable jury could find that bonding the gas piping system to the two water heaters was a reasonably anticipated use of the CSST product. Republic has therefore shown "that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue'"[46] such that "'a reasonable jury could return a verdict for the nonmoving party'"[47] as to the reasonably anticipated use factor. The Court now turns to the unreasonably dangerous factor.

### 2. Unreasonably Dangerous

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[48] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[49] Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[50]

---

thread area – see Figure 4-21) or to a black pipe component connected to an AutoFlare fitting. The corrugated stainless steel portion of the gas piping system SHALL NOT be used as the bonding attachment point under any circumstances. Bonding electrode conductor sizing shall be in accordance with Article 250 (Table 250-66) of ANSI/NFPA 70 1999 Edition. **The bonding is a requirement of the National Electrical Code**." Rec. Doc. 57-4 p. 293 (emphasis added).

[46] *Rivera,* 349 F.3d at 247 (quoting *Morris*, 144 F.3d at 380).
[47] *Pylant*, 497 F.3d at 538 (quoting *Anderson*, 477 U.S. at 248).
[48] LA. REV. STAT. § 9:2800.54(B).
[49] *Id.* at § 2800.54(C).
[50] *Woodling v. Hubbell Inc.,* 35 Fed. App'x 386, *4 (5th Cir. 2002) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).
59932

Rather, the claimant has the burden of proving the required elements under the LPLA.[51] Omega Flex contends that "there is a complete lack of evidence supporting [Republic's] claims sounding in *failure to warn* and *breach of warranty*."[52] For the purposes of this *Motion*, then, the Court shall only consider those two avenues for recovery.

      *a. Failure to Warn*

To successfully establish a failure to warn claim under the LPLA, the plaintiff must allege that, at the time the product left the manufacturer's control, (1) the product possessed a characteristic that may cause damage, and (2) the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.[53] The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[54] The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[55] In failure to warn cases, the law not only requires manufacturers to provide an adequate warning at the time the product left its control, if such warning is necessary to apprise ordinary consumers of the danger;[56] it also demands they use reasonable care to provide adequate warnings after the product leaves its control.[57] In considering whether a warning is adequate, the Court considers various factors, including

---

[51] LA. REV. STAT. § 9:2800.54(D).
[52] Rec. Doc. 57-1 p. 16 (emphasis added).
[53] LA. REV. STAT. § 9:2800.57(A).
[54] LA. REV. STAT. § 9:2800.54(A); *see also Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994).
[55] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).
[56] LA. REV. STAT. § 9:2800.57(A)-(B).
[57] LA. REV. STAT. § 9:2800.57(C).
59932

the severity of the danger and the likelihood that a warning will convey the nature of the danger to prospective users of the product.[58]

Despite the above, "no warning will be necessary where (1) the product is not dangerous to an extent which should be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristic; or (2) the user or handler already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."[59]

Omega Flex states that:

> Plaintiff cannot establish that the allegedly defective warning caused the damage to improperly bonded CSST system that was allegedly damaged by lightning because there is no evidence or information that the installer misread (or even read) the instruction. Instead, it is evident that the installer did not follow Omega Flex's explicit warnings and instructions, as the CSST was not bonded in accordance with the D&I guide, and therefore, Omega Flex is entitled to judgment as a matter of law on Republic's failure to warn claim for this reason as well.

Omega Flex argues that Republic has not provided any evidence regarding either the warning it should have been given or the frequency of accidents that have occurred due to the CSST's defectiveness. According to Omega Flex, "Republic has not offered any evidence concerning the potential economic repercussions a supposedly proper warning would have avoided."[60] Omega Flex also contends that Republic has not

---

[58] *See Andries v. General Motors*, 444 So.2d 1180, 1183 (La. 1983); *Marshall v. Beno Truck Equip., Inc.*, 481 So.2d 1022, 1032 (La. App. 1 Cir. 1985).

[59] *McFarlin v. New Hampshire Ins. Co.*, 2016 WL 3645200 at *6 (W.D. La. 2016) (citing LA. REV. STAT. § 9:2800.57(A)).

[60] Rec. Doc. 57-1 p. 22.

59932

provided any evidence about whether the contractor was aware of the alleged risks posed by the CSST, or whether the use of a different warning would have caused the contractor to act differently.[61] Finally, Omega Flex argues that Republic's failure to warn claim fails because Omega Flex's express warnings and instructions were not followed.[62]

Republic responds that Omega Flex ought to have issued a warning about the CSST's "propensity to become damaged by the electrical current from a lightning strike"[63] and "that fires could be started by perforations in the CSST due to lightning strikes."[64] To support these allegations, Republic offers various forms of testimony. Dr. Elizabeth Buc, through a report and an affidavit, opines that the propane gas in the Attuso home ignited "immediately after the opening [in the CSST] was created,"[65] and that "[t]he damage to the TracPipe CSST in this case had all of the attributes of a lightning induced melt opening as the result of arcing of the CSST with a nearby metal object."[66] Republic offers the affidavit of Johnie Spruiell ("Spruiell"), who, after conducting tests on the CSST, concluded that bonding and grounding of the CSST—even according to the D&I Guide's instructions—"does not always prevent electrical arcing from creating a perforation in the CSST."[67]

The Court finds that Republic has met its burden of showing a genuine issue of material fact as to its failure to warn claim. Republic supports with summary judgment evidence the allegation that, at the time it left Omega Flex's control, the CSST possessed

---

[61] Rec. Doc. 57-1 p. 23.
[62] *Id.* at p. 24.
[63] Rec. Doc. 63 p. 14.
[64] *Id.* p. 23.
[65] Rec. Doc 78-7 ¶14.
[66] Rec. Doc. 78-6 p. 6.
[67] Rec. Doc. 63-13 ¶8.
59932

a characteristic that had the potential to cause damage: alleged susceptibility to rupture and ignition due to lightning strikes. By arguing that the D&I Guide's installation instructions were confusing about the bonding technique, and by supporting that contention with Colwell's affidavit, Republic alleges with support that Omega Flex failed to use reasonable care to provide an adequate warning about the product. Finally, Republic offers summary judgment evidence supporting its position that the allegedly inadequate warning was the proximate cause of the fire at the Attuso home. The opinion of Dr. Buc supports the proposition that but for the CSST's alleged defect, the fire would not have occurred. Republic has therefore offered sufficient summary judgment evidence to support its failure to warn claim under the LPLA.

Regarding evidence about the contractor's awareness of the risks posed by CSST, Republic directs the court to *Safeco Ins. Co. v. Baker*, where a Louisiana appellate court held that failure to read a label does not automatically preclude a claim for inadequate warning.[68] Under *Safeco*, once a plaintiff proves the inadequacy of a warning or instruction, a presumption arises that a user would have read and heeded adequate warnings or instructions, but this presumption may be rebutted by showing that any warning would have been futile.[69] Republic argues that it "has raised sufficient evidence to demonstrate that the warnings and instructions contained in Omega Flex's D&I Guides were inadequate,"[70] thereby creating a presumption that the installer would have read and heeded the D&I Guide's instructions. For the same reasons that the Court found the installation of the CSST in the Attuso home to be a reasonably anticipated use of the

---

[68] 515 So.2d 655, 657 (La. App. 3 Cir. 1987), *writ denied*, 519 So.2d 130 (La. 1988).
[69] *Id.* (citing *Bloxom*, 512 So.2d at 850).
[70] Rec. Doc. 63 p. 15.
59932

product,[71] the Court here finds that Republic has put forth sufficient summary judgment evidence to support its position that the D&I Guide's instructions were inadequate, thus creating a presumption that the installer of the CSST adhered to the D&I Guide. Because Omega Flex does not argue that an adequate warning would have been futile, Republic need not present summary judgment evidence regarding whether the contractor read the D&I Guide or was aware of the alleged risks posed by the CSST.

Omega Flex's *Motion*[72] is DENIED as to the failure to warn claim presented by Republic. The Court now considers Republic's breach of warranty claim.

### b. Breach of Warranty

Under the LPLA, a product is unreasonably dangerous when it does not conform to an express warranty made by the manufacturer if the express warranty has induced someone to use the product and the claimant's damage was proximately caused because the warranty was untrue.[73] In addition to the above elements, a plaintiff must "(1) allege the content of the warranty and (2) explain how the warranty was untrue."[74]

Omega Flex argues that:

> Republic does not identify the "warranty" to which it is referring nor has it put forth evidence demonstrating that the CSST failed to conform to any such warranty. In addition, there is no evidence that the homeowner or the installer of the CSST was induced to use the CSST as a result of any such warranty. Furthermore, the CSST at issue was not bonded and installed in accordance with explicit instructions and warnings contained within the D&I Guide, and therefore, Republic is

---

[71] *See supra* p. 7-9.
[72] Rec. Doc. 57.
[73] LA. REV. STAT. § 9:2800.58.
[74] *Robertson v. AstraZeneca Pharms.*, 2015 WL 5823326 at *5 (E.D. La. 2015).
59932

unable to demonstrate that the CSST failed to perform in accordance with such a warranty.[75]

Republic does not present any arguments in support of its breach of warranty claim in its *Opposition*.[76] After a review of the record, because Republic has failed to offer any summary judgment evidence in support of its breach of warranty claim, the Court finds that there is no genuine issue of material fact as to the breach of warranty claim. Omega Flex's *Motion*[77] is GRANTED as to Republic's breach of warranty claim.

### III. CONCLUSION

For the reasons set forth above, Omega Flex's *Motion for Summary Judgment*[78] is **GRANTED** in part and **DENIED** in part. Omega Flex's *Motion*[79] is GRANTED as to Republic's breach of warranty claim and DENIED as to Republic's failure to warn claim. Republic's breach of warranty claim under the LPLA is therefore DISMISSED with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on April 13, 2020.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[75] Rec. Doc. 57-1 p. 25; *see also* p. 26-27.
[76] *See* Rec. Doc. 63.
[77] Rec. Doc. 57.
[78] *Id.*
[79] *Id.*
59932